497 So.2d 404 (1986)
Cynthia Ann CORMIER, Plaintiff-Appellant,
v.
SAVE-TIME, INC., Defendant-Appellee.
No. 85-1124.
Court of Appeal of Louisiana, Third Circuit.
November 5, 1986.
*405 Cox, Cox and Townsley, Rex D. Townsley and James J. Cox, Lake Charles, for plaintiff-appellant.
Daniel K. Rester, Baton Rouge, for defendant-appellee.
Before DOMENGEAUX, YELVERTON and KNOLL, JJ.
YELVERTON, Judge.
This is a worker's compensation appeal by the plaintiff, Cynthia Ann Cormier, from a judgment of the trial court holding that she had failed to prove disability beyond May 11, 1984, and dismissing her claim for penalties and attorney's fees. We affirm the finding that the disability had ceased, but we reverse the denial of an award of penalties and attorney's fees. We find that the failure of the employer to initially commence benefits within the statutory time was arbitrary and capricious.
Plaintiff, a 25 year old, unmarried mother of two children was working for Save-Time, Inc., as a clerk at a convenience store in Vinton, Louisiana, when on August 26, 1982, she suffered a back injury while lifting a case of cold drinks in a beverage cooler. She reported the accident and was given authorization to see a doctor. She saw Dr. Allen C. Richert on August 27 and on August 30 he told her she could go back to work but to avoid heavy lifting.
Returning to work on August 31, she worked for three days and up to the middle of her shift on the fourth day, then left the job because of pain.
She returned to Dr. Richert and was hospitalized at West Calcasieu-Cameron Hospital from September 10 to September 14. During this hospitalization an orthopedist in consultation with Dr. Richert diagnosed a moderate thoracic back strain. Following the hospitalization, Dr. Richert treated her with ultrasound for three days in the latter part of September. She saw Dr. Jerome Ambrister twice in late September *406 and early October 1982, and he diagnosed a dorsal sprain from which he felt plaintiff should recover in not more than ten weeks.
On November 1, 1982, Save-Time, Inc. received a letter from plaintiff's attorney making demand for worker's compensation benefits.
Plaintiff went to see Dr. Dean Moore, a neurosurgeon, on November 10, 1982. She complained of low back pain and he found moderate paravertebral muscle spasm in the lumbar region resulting in limitation of motion of the back. He hospitalized her for five days in November for physical therapy, bed rest, and traction. He diagnosed a lumbar strain with nerve root irritation.
A medical report dated November 10, 1982, from Dr. Moore finding a herniated disc was forwarded to defendant as soon as that letter became available.
Dr. Moore continued to treat the plaintiff for the next two years. In 1983, after he had reached the conclusion based on early objective tests and her continuing subjective symptoms that she had a herniated disc, he caused a myelogram to be run. This myelogram, done on April 7, 1983, did not confirm a herniated disc so he recommended a diskogram. Plaintiff refused the diskogram. Other tests were normal.
Plaintiff returned several times in late 1983 and early in 1984 complaining of headaches, as well as low back pain. Dr. Moore continued to recommend a diskogram which the patient continued to refuse. At her last visit to him on August 22, 1984, he again recommended a diskogram, and plaintiff again refused. On this occasion plaintiff was complaining about her nerves and Dr. Moore suggested that he would be willing to set up a psychiatric examination for her, but the plaintiff did not pursue this suggestion.
At the trial of the case on May 30, 1985, Dr. Moore testified that he was still of the opinion that plaintiff had a ruptured disc, but to a question from the trial court he gave the following response:
"When I've checked her she's had positive clinical findings to indicate a ruptured disc, but nothing test wise had backed that up."
He testified that he was basing this diagnosis and his opinion regarding her disability solely on her present subjective complaints of pain.
On November 29, 1982, the plaintiff's petition for worker's compensation benefits was filed. Defendant filed an answer to this lawsuit on December 14, 1982, denying all liability.
The defendant began to pay compensation benefits on January 4, 1983, and paid the first medical bills on January 26 of that year. Thereafter, defendant paid most of the medical bills and paid weekly benefits in the amount of $93.32 up until May 11, 1984, when it discontinued the payment of benefits. Defendant acknowledged at the trial that its discontinuance of benefits on May 11, 1984, was done because that was the date it learned plaintiff had refused to take a diskogram.
The defendant's explanation of the delay in making the initial payment of benefits raises three main defenses. First, the demand notice did not comply with the technical notice procedure outlined in LSA-R.S. 23:1293 and 1294, in effect at the time of this accident. Second, the employer did not receive notice of plaintiff's proof of disability until three months after the accident, therefore the 60 days did not begin to run until then. Third, Save-Time, Inc. declared that once it received Dr. Moore's report it forwarded everything to the insurance company believed to be its worker's compensation insurer, and relied on the insurance company to do the rest, only to learn that it was not covered for worker's compensation insurance.
The trial court, ruling from the bench following the trial on the merits, held that plaintiff had not proved any disability beyond May 11, 1984, and rejected her claim for weekly benefits. The court denied penalties and attorney's fees. The court awarded $1,096.62 in unpaid medical expenses.

*407 Determination of Benefits

Although the employer admittedly stopped the payment of benefits on May 11, 1984, solely because of the refusal of the plaintiff to undergo a diskogram test, which Dr. Moore thought would reveal whether or not the plaintiff suffered a herniated disc, and although the trial court in its reasons for judgment rejecting plaintiff's demand held that it would not award plaintiff benefits beyond May 11, 1984, our appreciation of the trial court's reasons for judgment is that the trial court did not thereby sanction the discontinuance of benefits for the failure of the plaintiff to undergo that test. The real reason why the trial court rejected plaintiff's demand for benefits beyond May 11, 1984, implicit in its reasons for judgment, was that plaintiff had ceased being eligible for benefits at some indefinite but considerable time before May 11, 1984. In other words, what the court was saying was that the defendant was justified in terminating benefits on May 11, 1984, because plaintiff was not disabled as of that date and had not been disabled for some considerable time before that date.
The trial court in its oral reasons for judgment emphasized that the inconsistencies and lack of truthfulness in plaintiff's testimony caused him to be convinced that she had long ago stopped suffering from any disability caused by this accident. When the question is credibility the trial court's vantage point in assessing the witnesses is superior to our own. Childs v. Zurich American Ins. Co., 476 So.2d 403 (La.App. 2nd Cir.1985), writ denied, 479 So.2d 920 (La.1985). Great weight is afforded to the findings of the trial court with regard to the credibility of the plaintiff in a worker's compensation suit. Kilgore v. Western Casualty & Surety Co., 462 So.2d 1366 (La.App. 3rd Cir.1985), writ denied, 466 So.2d 470 (La.1985). Absent some manifest error, we must follow the trial court's determination of credibility of the witnesses and the evidence they present. Moore v. Moore, 479 So.2d 1040 (La.App. 3rd Cir.1985). We find no manifest error; in fact, the record supports the credibility determination of the trial court. The plaintiff testified in court that it was her low back that hurt. She told the first two doctors who saw her following the accident that it was her mid back that she had injured. She described her pain to the trial judge as having been constant since the accident, a throbbing, severe and apparently unrelenting type of pain. This was not corroborated by any of the witnesses who testified; even the doctors testified that they did not think her pain was that bad. She stated that since the accident she has been unable to do house work, fold clothes, bring in groceries, play with her children, wash her car, or do anything else that required exertion. Certain neighbors testified, on the other hand, that they had seen plaintiff almost daily throughout this time and that she regularly cleaned house, washed her car, carried her baby, helped move furniture around, brought in groceries, carried laundry, and never displayed any kind of a back problem. A neighbor, Renee Billedeaux, testified that she and her husband and plaintiff and her boyfriend went to a nightclub in Orange, Texas, in December 1983, and that plaintiff danced several fast dances including the "twist." On rebuttal plaintiff admitted going to the nightclub but stated she did not recall having danced.
As pointed out earlier in the discussion of the testimony of Dr. Dean Moore, plaintiff's treating physician, her entire case rested upon the genuineness of her subjective complaints of pain. Based on his evaluations of credibility of the various witnesses who testified, including the plaintiff herself, the trial judge ultimately concluded that he simply could not believe that plaintiff was suffering the pain in the low back that she described. With this foundation for liability eliminated as a credibility determination, and having found no basis in this record for a determination that this finding was manifestly erroneous, the constraints of our appellate review authority require us to affirm the finding that plaintiff has failed to prove disability upon *408 which an additional award of benefits could be made.

Attorney's Fees and Penalties
No one disputes that plaintiff initially had a back strain and that it was for some time disabling. We are not impressed by the reasons given by defendant excusing its failure to pay benefits within sixty days following the initial demand, under the law in effect at the time of this accident, R.S. 23:1201.2. None of these excuses are meritorious. For example, sending the notice of demand to Save-Time Corp. instead of Save-Time, Inc., defendant's correct name, operated no prejudice because it admitted getting the notice and identifying it for what it was. Besides, its subsequent answer to the petition with a denial of all liability constituted a waiver of the statutory notice and delay. Mire v. Grigsby Brothers, Inc., 191 So.2d 362 (La. App. 3rd Cir.1966), writ denied, 250 La. 5, 193 So.2d 524 (1967); Brasseaux v. Argonaut Insurance Company, 432 So.2d 1153 (La.App. 3rd Cir.1983). Defendant's second argument that the sixty days did not begin to run until it received a medical report in late November is inconsistent with its subsequent denial of any liability. Even assuming that plaintiff's first notice or demand for benefits was deficient for lack of containing a medical report, the defendant's failure to respond to the letter and the general denial of liability in defendant's answer to plaintiff's petition constituted a waiver of all the deficiencies in the proof of loss. See Gatte v. Coal Operators Casualty Company, 256 La. 325, 236 So.2d 485 (1970). Therefore, the letter of October 29 constituted sufficient notice of proof of loss. Further, defendant is required to make a reasonable investigation of a notice of demand for compensation, and to do so within the required statutory time in order to avoid penalties and attorney's fees. Billiot v. Alton's Bakery of Morgan City, Inc., 398 So.2d 624 (La.App. 1st Cir. 1981). Where subsequent to an initial optimistic report, an employer receives information indisputably showing a claimant to be disabled, the employer cannot rely upon the early report and solely on its basis avoid penalty and attorney's fees for arbitrary non-payment of compensation benefits indisputably due the disabled claimant. Alexander v. Department of Culture, Recreation and Tourism, 410 So.2d 1286 (La.App. 3rd Cir.1982). In choosing a course of inaction following plaintiff's demand supported by medical reports evidencing compensable disability, the defendants proceeded at their own peril. Id. Finally, the defense that the delay was due to having turned the case over to an insurer erroneously believed to have been the worker's compensation carrier of defendant, is on its face no excuse at all.
Although the delay did not greatly exceed the sixty days contemplated by law, it nevertheless exceeded that maximum time period and no excuse given qualifies to avoid the finding of the delay being arbitrary and capricious.
Our finding that the initial delay in paying benefits was arbitrary and capricious is likewise supported by the trial court's reasons for judgment. The trial court recognized the seriousness of that contention when it said:
"I think you've made a case where perhaps it should be awarded but I don't think plaintiff should benefit after the testimony that I've heard in this courtroom today from the penalties and attorney's fees."
We think the trial court fell into error in depriving the plaintiff of the benefits of this award as a penalty imposed on the plaintiff herself. The statutory penalties and attorney's fees are imposed upon an employer or insurer because of their arbitrary and capricious conduct. The trial court cannot free the employer from the consequences of that conduct as a means of punishing a worker who subsequently misrepresented the extent of her disability. At the time of defendant's arbitrary and capricious conduct, the plaintiff was a deserving claimant, having had a genuine accident and for a time suffering a genuine disability, as confirmed by all three of the *409 doctors who had up to that point examined and treated her.
We reverse the rejection by the trial court of the plaintiff's demand for attorney's fees and penalties. We award penalties on the amounts past due and paid on January 4, 1983, with interest. We assess attorney's fees at $2,000. We likewise reverse the equal division of court costs in the court below, and we order that all court costs in the court below are to be paid by Save-Time, Inc. In all other respects the judgment of the trial court is affirmed. The costs of this appeal are to be paid by appellee, Save-Time, Inc.
REVERSED IN PART; AFFIRMED IN PART; and RENDERED.