CIACCIO, Judge.
Defendants, Zurich American Insurance Company and Chalmette General Hospital, Inc., seek the termination of or a modification of the trial court’s award of worker’s compensation benefits to plaintiff, Melvina Bailey. Finding no change in plaintiff’s disability status, we uphold the trial judge’s award of benefits.
This case arose when plaintiff slipped and fell while in the course and scope of her employment as a dietary aide at Chal-mette General Hospital. Her initial injury was diagnosed as a strain of the hamstring muscles in the left knee and hi$. Six different physicians treated plaintiff following the accident. Based on the opinion of some of these physicians that plaintiff could return to work, defendants stopped compensation benefits in March 1984.
On May 1, 1984, plaintiff filed suit to recover both worker’s compensation benefits allegedly due to her and all medical expenses resulting from treatment of her fall-related injuries. After a trial on May 19, 1985 and February 10, 1986, the trial judge ruled in plaintiff’s favor awarding her 200 weeks of worker’s compensation benefits in the sum of $113.58 per week commencing October 17, 1983. The judgment further decreed that all unpaid medical bills introduced into evidence and all subsequent medical bills for a period of 200 weeks from the date of injury be paid by defendants.
Defendants appealed this judgment to us. Following a review of the trial record, we found the trial court erred in not awarding benefits for an indefinite duration and amended the judgment to award plaintiff temporary total disability benefits until her *735 disability ceases. Insofar as the judgment awarded plaintiff all future medical expenses for 200 weeks, we amended it to award only those medical expenses which were incurred by plaintiff as a result of the injury and unpaid by defendants as of the date of trial. Bailey v. Zurich American Insurance Company, 503 So.2d 611 (La. App. 4th Cir., 1987).
Subsequently in March 1987, defendants filed a rule pursuant to LSA-R.S. 23:1381(c), seeking a modification of the trial court’s award of benefits to plaintiff. After a trial on this rule, the trial judge again rendered judgment in favor of plaintiff, finding that she was still temporarily totally disabled. It is from this judgment that defendants appeal.
In seeking a modification of a decree awarding worker’s compensation benefits, the defendant employer and insurer have the burden of proving by a preponderance of the evidence that the employee’s disability has ceased or diminished. Thompson v. Natchitoches Parish Hospital Service District, 365 So.2d 57 (La.App. 3rd Cir.1978).
In the instant matter, plaintiff testified at trial that she continues to experience pains in her left leg and back and that she sought treatment from Dr. Bruce Raz-za, her treating physician, on several occasions since the initial trial on May 19, 1985. She stated her first visit with Dr. Razza following the trial was nearly one year later on May 9, 1986. Plaintiff testified that at that visit Dr. Razza told her he did not want to treat her until he could run several tests to determine the origin of her pains. She further testified that Dr. Razza admitted her to St. Charles General Hospital on June 21, 1987 where she remained for four days and had several tests performed on her. Regarding her disability, plaintiff testified that she cannot sit or stand for more than one-half hour at a time and often cannot sleep through the night due to the pain. Plaintiff also stated she takes Naprosyn, a pain medication, which offers temporary relief of her pains at certain times. She said she is unable to clean her house and that her daughter, husband and daughter-in-law perform many of the household chores that she once did. Plaintiff was of the opinion that her existing back and leg pains prevented her from returning to work as a dietary aide or seamstress, a job she held years earlier.
In attempting to prove that plaintiff’s disability had ceased or lessened since May 19, 1985, defendants offered the testimony of vocational rehabilitationist expert, Patricia Knight, at trial. Their evidence also included the testimony of Dr. Bruce Razza taken during depositions on April 14, 1987 and December 15,1987, in addition to plaintiff’s medical records from St. Charles General Hospital and Jefferson Orthopedic Clinic.
Ms. Knight testified at trial that she administered several tests to plaintiff including an achievement test and career assessment inventory tests. Considering the restrictions Dr. Razza placed on plaintiff, Ms. Knight stated she was able to locate two employment positions for plaintiff. These included a position as a seamstress with a local New Orleans clothing manufacturer and also a job as a parking garage attendant. Ms. Knight testified that both of these positions paid minimum wage, $3.35 per hour. She also admitted at trial that the seamstress position was a sedentary one and that the parking garage attendant position required a person to be confined to a small booth and to sit and stand repeatedly. Ms. Knight opined that plaintiff could perform either of these jobs adequately, even though she had physical limitations placed on her by her doctor.
At his deposition taken on April 14, Dr. Razza stated he saw plaintiff for the first time after the May 19, 1985 trial on May 9, 1986. He testified he did a physical examination on plaintiff and that her symptoms and problem remained virtually unchanged from his prior diagnosis. Dr. Razza said plaintiff still had the same complaints and experienced the same pain. He diagnosed her condition on May 9 as symptomatic lumbar spondylosis with sciatica of the left lower extremity or a degenerative condition of the spine with irritation of a nerve in the left leg. Although he thought, further medical treatment in the form of nerve *736 blocks could alleviate some of plaintiffs pain, he did not think her condition severe enough to warrant diskogenic surgery. However, Dr. Razza stated that he felt plaintiffs symptoms are severe enough to warrant her from any physical activities involving repetitive lifting, bending, squatting, twisting and prolonged sitting and standing. Rating plaintiffs overall anatomical disability at five percent, Dr. Razza opined that she could not return to work as a dietary aide and anticipated exacerbation of her symptoms if she returned to work. Dr. Razza also examined plaintiff on March 26, 1987. He indicated that plaintiffs condition at the time of this visit remained unchanged from the May 9, 1986 visit.
Dr. Razza was deposed again on December 15, 1987 for the purpose of perpetuating his testimony for trial. At this deposition, he testified regarding the results from plaintiffs tests taken at St. Charles General Hospital between June 21 and June 25, 1987 and on September 15, 1987. He testified that a MRI, EMG, CAT scan and SEP test were conducted on plaintiff. The MRI or magnetic resonance imaging of the spine revealed no disk herniation or ruptured disk. The EMG, a test that checks the motor component of the nerve, revealed no damage. The CAT scan and SEP tests revealed a narrowing of the opening passage for the nerve due to the spondylosis. Dr. Razza stated the SEP picked up irritation to the sensory component of the nerve which, in his opinion, would substantiate plaintiffs complaints of pain in the absence of objective findings.
He further testified that he suspected plaintiff had impaired disk functioning due to degeneration of the disk or a crack in the disk which the MRI or CAT scan could' not detect. Dr. Razza stated that the latest diagnostic test which combined a CAT scan and diskogram could detect whether a disk caused plaintiffs pain but that he would not perform that test on a patient unless the patient could absolutely not tolerate or live with pain. He decided not to perform the test on plaintiff.
Describing plaintiffs pattern of pain, Dr. Razza stated it was an L5 nerve root pattern which means it was from her lower back, down the buttocks to the posterior lateral thigh and into her left leg and foot. He found there was impaired conduction of the sensory fibers of the L5 nerve root, even though the MRI, EMG and bone scan results were normal. Dr. Razza stated that he believed plaintiffs symptoms were the result of her fall related injury because she had no symptoms prior to the time of the injury. The treatment Dr. Razza recommended for plaintiff included weight reduction, strengthening her musculature, use of anti-imflammatory analgesic medication such as heat and nerve blocks to temporarily relieve her pain.
Defendants also offered the medical report from Jefferson Orthopedic Clinic prepared by Dr. Mark Juneau after he examined plaintiff on March 4, 1987. In the report, Dr. Juneau concluded plaintiff showed signs of early degenerative changes in her knee and that her excessive weight complicated her problem, but he felt she could return to work as a dietary aide in the hospital cafeteria.
After thoroughly reviewing the entire record in this case, we find the defendants have not sustained their burden of showing that plaintiffs temporary total disability has diminished or ceased since the trial on this matter in May, 1985. There is ample evidence in the record to support the trial court’s judgment.
Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.