583 So.2d 1222 (1991)
James TASSIN, Plaintiff-Appellee,
v.
CIGNA INSURANCE COMPANY, Tennessee Gas Pipeline Company, and Tenneco, Inc., Defendants-Appellants.
No. 90-240.
Court of Appeal of Louisiana, Third Circuit.
July 16, 1991.
*1223 Broussard, Bolton, Halcomb & Vizzier, Daniel Broussard, Alexandria, for plaintiff-appellee.
Sutherland, Juge, Horack & Dwyer, Teresa Leyva, New Orleans, for defendants-appellants.
Before DOMENGEAUX, C.J., and GUIDRY and FORET, JJ.
DOMENGEAUX, Chief Judge.
James Tassin filed this suit seeking worker's compensation benefits, medical expenses, penalties and attorney's fees for an injury he sustained in the course and scope of his employment with Tennessee Gas Pipeline Company. Tassin named as defendants Tennessee Gas Pipeline Company, its parent company, Tenneco, Inc., and CIGNA Insurance Company. At trial, defendants stipulated that Pacific Employers *1224 Insurance Company was the CIGNA company providing coverage.
After trial on the merits, the district court ruled in favor of the plaintiff, awarding him temporary total disability benefits at the maximum rate of $261.00 per week, unpaid medical expenses and mileage expenses. The court denied the plaintiff's claim for penalties and attorney's fees. Plaintiff and defendants have appealed. We affirm in part, reverse in part, and render.

FACTS
On July 20, 1987, while engaged in sandblasting operations, Tassin and a co-employee were attempting to repair a leak in an air tank. When the co-employee tapped a relief valve on the tank, the valve broke apart, releasing 250 pounds of compressed air. Tassin was thrown from the top of the tank to the ground, where he landed on his right foot.
Tassin had been employed by Tennessee Gas Pipeline for six years prior to this accident. In 1981, he began his career with the company as a maintenance worker and was thereafter promoted several times to "Utility I" operator, the position he held at the time of the accident. His duties consisted of sandblasting, bushhogging, high pressure welding and loading and unloading materials.
In June of 1987, over one month before the accident, Tassin informed his superiors that he would be resigning from the company in September because he planned to attend college at Louisiana Tech University. At the time of trial, Tassin was a senior in college with a 3.96 grade point average.
The accident of July 20, 1987 was immediately reported to Tassin's supervisor, Eddie Keyes, and subsequently to Leroy Cates, district superintendent. Tassin complained of pain in the right lower back radiating to his legs, but he declined medical assistance at that time. The next day, however, Keyes took Tassin to "the company doctor," Dr. James Mayes, a general practitioner in Kinder, Louisiana. Dr. Mayes then referred Tassin to Dr. Clark Gunderson, an orthopedic surgeon in Lake Charles.
Dr. Gunderson treated Tassin from July 22, 1987 through September 1, 1987. At his first visit, Tassin was complaining of low back pain and tingling in his right leg. Dr. Gunderson referred him to physical therapy and suggested he perform only light duty. When he learned that Tassin's employer did not have a light duty position available, he instructed Tassin to stay off work and return in one week. At the next two office visits, plaintiff still complained of lower back pain, although Dr. Gunderson detected no spasm or tenderness. At the plaintiff's final visit, Dr. Gunderson still found no objective signs to substantiate Tassin's complaints. When the plaintiff reported he was resigning from work to go to school, Dr. Gunderson discharged him.
In his final report, dated September 15, 1987, Dr. Gunderson stated, "He [Tassin] advised that he was resigning his position and was going to begin school. I advised him he could do this and I discharged him from my care." In his deposition, Dr. Gunderson stated that at the time of discharge, he did not determine if Tassin was fit for full duty because plaintiff was going to school.
While under Dr. Gunderson's care, plaintiff was also treated by Dr. Donald Laborde, a chiropractor in Alexandria. Dr. Laborde ordered a CT scan which was normal. However, tests performed by Dr. Laborde indicated a medial disc protrusion, and he referred Tassin to another orthopedic surgeon, Dr. Vanda Davidson. Dr. Laborde stated that throughout his treatment, from August 13, 1987 through September 9, 1987, the plaintiff was not a candidate to resume full employment duties.
Dr. Davidson first examined Tassin on September 9, 1987. Tassin was complaining of low back pain, leg pain and foot pain, and at that visit, Dr. Davidson observed spasms in the paraspinous muscles and tenderness over the sacrospinals and the sciatic notch. Dr. Davidson ordered an *1225 MRI, which was performed on October 6, 1987. The MRI was essentially normal, with the exception of the L-5, S-1 disc, which Dr. Davidson described as "a little funny" but not degenerative.
Dr. Davidson prescribed anti-inflammatory medication and placed Tassin on an exercise routine. He believed Tassin's condition to be either a mechanical problem or a rheumatoid arthritic disease initiated by the accident. Dr. Davidson thought Tassin was capable of performing light duty work as of May 1988 and that Tassin had reached his maximum medical improvement in September of 1988, although Tassin did experience a severe aggravation in March of 1989. At the time of trial, Tassin was still under Dr. Davidson's care, returning every three months for medication and maintenance.
At trial, Tassin testified he was still taking two types of anti-inflammatory medication. He stated he could not perform the duties of his previous employment, and he reported recurring pain and numbness which was aggravated by physical activity.
Defendants paid weekly benefits and medical expenses from the date of the accident through September 1, 1987, the date of Tassin's last visit to Dr. Gunderson. At trial, they offered no medical expert testimony to contradict that of the plaintiff's treating physician and chiropractor. The defendants attempted to introduce the testimony of Glen Hebert, a vocational rehabilitation specialist, but the trial court did not allow Hebert's testimony into evidence because this witness had not been listed in defendants' answers to interrogatories or in their pretrial order.
The trial judge determined Tassin was temporarily and totally disabled and ordered the payment of benefits at the maximum rate of $261.00 per week from September 1, 1987 until "plaintiff is capable of being employed as a utility I or similar occupation." The court further awarded Tassin unpaid medical expenses of $1,009.14 and travel expenses of $207.90. The trial court denied Tassin's claim for penalties and attorney's fees, finding the insurer made a reasonable effort to determine the plaintiff's medical condition before terminating benefits.

DISABILITY
In claiming a total disability, whether temporary or permanent, the plaintiff must prove his inability to engage in any gainful occupation, whether or not the same or similar to that customarily engaged in at the time of injury. La.R.S. 23:1221(1). The plaintiff may rely on medical and lay testimony. Simpson v. Kresge Co., 389 So.2d 65 (La.1980). Once the trial court has made factual findings as to disability and the length thereof, those determinations are entitled to great weight and are not to be disturbed except upon a showing of manifest error. Bailey v. Zurich American Insurance Co., 503 So.2d 611 (La.App. 4th Cir.1987) and 547 So.2d 734 (La.App. 4th Cir.1989), writ denied, 552 So.2d 381 (La.1989).
After reviewing the record, we find Tassin has proved his entitlement to temporary total disability benefits at least through May 1, 1988, when Dr. Davidson, his treating orthopedic surgeon, released him to return to light duty work. In addition to Tassin's own testimony, which the trial judge must have accepted as credible, the medical testimony establishes that Tassin was never released to return to work prior to that date. The record does not support the defendants' claim that Dr. Gunderson released plaintiff to work without any restrictions. Dr. Gunderson released plaintiff to go to school; he never determined if plaintiff was capable of performing his previous job duties.
Plaintiff, however, was released to light duty employment on May 1, 1988. After this date, we find plaintiff was entitled to an award of supplemental earnings benefits. To qualify for SEB, a claimant must prove by a preponderance of the evidence that a work related injury resulted in his inability to earn wages equal to 90% or more of his wages at the time of injury. Clark v. Welex, a Halliburton Co., 517 So.2d 1186 (La.App. 3d Cir.), writ denied, 521 So.2d 1170 (La.1988). Once the plaintiff *1226 has met this threshold requirement, benefits are calculated at "sixty-six and two-thirds percent of the difference between the average monthly wages at the time of injury and average monthly wages the employee is able to earn...." La.R.S. 23:1221(3)(a).
If the employee is not employed or self-employed or is earning less than he is able to earn, the employer must then show the employee is physically capable of performing employment which is offered or available. La.R.S. 23:1221(3)(c)(i).
Defendants contend Tassin is not entitled to SEB because he elected to go to college rather than return to some form of employment. We disagree. Entitlement to benefits under the worker's compensation act is based upon the claimant's ability or inability to earn wages. Under La.R.S. 23:1221(3)(c)(i), if an employee is not working, then the employer must prove that employment which the claimant is physically able to perform has been offered or is available. See Payne v. Country Pride Foods, Ltd., 525 So.2d 106 (La.App. 3d Cir.1988).
Defendants attempted to meet their burden under La.R.S. 23:1221(3)(c)(i) through the testimony of Glen Hebert, a vocational rehabilitation specialist. However, the trial court sustained plaintiff's objection to Hebert's testimony because this witness was not listed in the defendants' answers to interrogatories or in their pretrial order. Hebert's testimony was, therefore, proffered.
In sustaining the plaintiff's objection, the trial court noted his policy of strict compliance with the pretrial order. The decision to modify the pretrial order is within the trial court's discretion. See Highlands Insurance Co. v. Missouri Pacific Railroad Co., 532 So.2d 317 (La.App. 3d Cir.1988), affirmed, 540 So.2d 287 (La. 1989); also Valley v. American Insurance Co., 510 So.2d 449 (La.App. 3d Cir.1987), writ denied, 514 So.2d 130 (La.1987). We find no abuse of discretion in the trial court's exclusion of Hebert's testimony.
The trial court awarded plaintiff temporary total disability benefits at the maximum rate of $261.00 per week, until he could perform the duties of his former job, a Utility I operator. We affirm the award of temporary total disability benefits but only through the date of his release to light duty work, May 1, 1988. Thereafter, plaintiff is entitled to SEB based upon zero earnings calculation. The trial court's finding of disability is affirmed, but the judgment is amended to reflect this change.

PENALTIES AND ATTORNEY'S FEES
Plaintiff has answered this appeal, seeking reversal of the trial court's denial of his claim for penalties and attorney's fees.
Defendants terminated benefits and medical expenses on September 1, 1987, the date Dr. Gunderson discharged plaintiff. The record reveals that, thereafter, defendants received requests for the reinstatement of benefits, reports from Dr. Davidson and Dr. Laborde, and copies of plaintiff's medical bills.
In a memo dated October 12, 1987, Ms. Carmen Dennen, the adjuster handling this case, reported that plaintiff's claim was denied because tests related to his injury were negative and because plaintiff resigned his position to return to school.
La.R.S. 23:1201E subjects the employer to a 12% penalty on any unpaid compensation installment, unless the employer or insurer reasonably controverts the employee's right to benefits. La.R.S. 23:1201.2 authorizes an award of attorney's fees when the employer or insurer's failure to pay a claim within 60 days of written notice is found to be arbitrary, capricious or without probable cause.
As stated above, in his report of September 1, 1987, Dr. Gunderson did not release Tassin to return to work and did not comment on Tassin's physical abilities. Defendants continued to receive information about Tassin's condition throughout his treatment by Dr. Laborde and Dr. Davidson. Considering the equivocal nature of Dr. Gunderson's report and the continued correspondence on behalf of the plaintiff, it was incumbent upon the defendants to further *1227 investigate Tassin's condition. Yet, at trial, defendants presented no medical testimony to contradict the plaintiff's medical experts.
In Cormier v. Save-Time, 497 So.2d 404 (La.App. 3d Cir.1986), we stated:
Where subsequent to an initial optimistic report, an employer receives information indisputably showing a claimant to be disabled, the employer cannot rely upon the early report and solely on its basis, avoid penalties and attorney's fees for arbitrary nonpayment of compensation benefits indisputably due the disabled claimant. In choosing a course of inaction following plaintiff's demand supported by medical reports evidencing compensable disability, the defendants proceeded at their own peril. (Citations omitted.)
497 So.2d at 408.
Based upon the above, we must conclude that the trial court erred in denying plaintiff's claim for penalties and attorney's fees. After reviewing the record and considering all aspects of this case, we will award James Tassin $5,500.00 for attorney's fees for services rendered, both at trial and on appeal.

DECREE
For the above and foregoing reasons, the judgment of the trial court awarding temporary total disability benefits to James Tassin is affirmed in part, but amended to label those benefits due after May 1, 1988 as supplemental earnings benefits, to be computed at a zero earnings base. That portion of the trial court judgment denying plaintiff's claim for penalties and attorney's fees is reversed, with reasonable attorney's fees set at $5,500.00. Costs of this appeal are assessed to defendants, Tennessee Gas Pipeline Company, Tenneco, Inc., and CIGNA Insurance Company (Pacific Employers Insurance Company).
AFFIRMED IN PART, AS AMENDED; REVERSED IN PART; AND RENDERED.