611 So.2d 674 (1992)
Clifton S. HEBERT, Plaintiff-Appellant,
v.
GREY WOLF DRILLING COMPANY, INC., et al., Defendants-Appellees.
No. 91-1103.
Court of Appeal of Louisiana, Third Circuit.
December 10, 1992.
*675 Kearney Tate, Eunice, for plaintiff-appellant.
John F. Wilkes III, Lafayette, for defendant-appellee.
Before STOKER, YELVERTON and COOKS, JJ.
COOKS, Judge.
This is an appeal from a suit brought by the plaintiff, Clifton Shayne Hebert, against his former employer, Grey Wolf Drilling Company, and its workers' compensation insurer, First Horizon Insurance Company. Hebert sought workers' compensation benefits and supplemental earnings benefits for an injury he allegedly incurred while in the employ of Grey Wolf; and penalties for the arbitrary and capricious refusal of defendants to pay benefits.
The trial court rendered judgment in favor of the defendants, holding plaintiff was not entitled to workers' compensation benefits. Further, the trial court found defendants' decision to deny continued benefits was neither arbitrary nor capricious.

FACTS
On February 26, 1986, plaintiff slipped and fell while working on an oil derrick during the course and scope of his employment. Thereafter, he received weekly compensation benefits at the rate of Two Hundred Fifty Four Dollars ($254.00) per week from the date of the accident until March 10, 1989, when the benefits were terminated. All medical bills submitted by plaintiff, with the exception of those related to his carpal tunnel syndrome and occipital neuralgia, were paid by defendants. On July 14, 1989, plaintiff filed the present suit seeking additional workers' compensation benefits, medical benefits, Supplemental Earnings Benefits, penalties and attorneys fees.
On appeal, plaintiff principally assigns as error the trial court's refusal to award him additional workers' compensation benefits. He urged at the trial level two (2) separate claims for relief under the Act. First, plaintiff claimed he suffered a temporary total disability; and thus, he is entitled to benefits under La.R.S. 23:1221(1). Alternatively, he claimed entitlement to Supplemental Earnings Benefits under La.R.S. 23:1221(3).

TEMPORARY TOTAL DISABILITY CLAIM
We agree with the trial court, that plaintiff did not successfully prove his claim for temporary total disability. In order for an employee to receive benefits under La.R.S. 23:1221(1), he must prove that he is temporarily totally disabled from engaging in any self-employment or gainful occupation for wages. Wokoma v. Hawk Pipe Service, Inc., 509 So.2d 665 (La.App. 3 Cir.1987). While the Workers' Compensation Act is to be construed liberally, still a claimant must prove his claim by a preponderance of the evidence. Prim v. City of Shreveport, 297 So.2d 421 (La. 1974). The trial court's finding was based on the testimony and records of the various physicians, plaintiff's own-testimony, and a surveillance videotape of plaintiff performing acts inconsistent with a person who is totally disabled.
Immediately following plaintiff's accident, he was taken to Lafayette General Hospital. X-rays of plaintiff's heels were negative; but, these x-rays did reveal a very mild compression fracture of the second lumbar vertebrae. Plaintiff was examined by Dr. William Meuleman at the hospital, and again on two (2) subsequent visits following his release from the hospital. On the last visit, Dr. Meuleman found plaintiff was totally disabled; however, he projected *676 that within one (1) year plaintiff would fully recover from the injury.
Plaintiff requested a second opinion from Dr. Louis Blanda, who became plaintiff's treating physician. Dr. Blanda ran a number of tests, among them x-rays, a bone scan, and a CAT scan, which all revealed only the fracture of the second lumbar vertebrae. Dr. Blanda estimated a three (3) to six (6) month disability with the injury; and predicted plaintiff would be able to return to light or medium work.
On plaintiff's next visit with Dr. Blanda, after complaining of numbness in his right arm, an EMG was ordered. The EMG revealed bilateral carpal tunnel syndrome and generalized peripheral neuropathy. Dr. Blanda and Dr. James Domingue, a neurologist, felt the carpal tunnel syndrome was not related to the accident.
On a subsequent visit to Dr. Blanda, plaintiff complained of increased pain in his back, and Dr. Blanda recommended neurological consultation. In September, 1987, Dr. Blanda wrote, "If Dr. Domingue doesn't diagnose any definite neurological disorder the patient may be released back to light duty work in the near future."
In October of 1987, Dr. Blanda received the results of an MRI, which was normal in the neck and showed only the fracture of the second lumbar vertebrae, which Dr. Blanda noted was healing properly.
On April 4, 1988, plaintiff saw Dr. Blanda complaining of neck pain and headaches and requesting permission to consult with Dr. Robert Rivet regarding the headaches. Dr. Rivet diagnosed the headaches as occipital neuralgia and began injections. Dr. Rivet suggested surgery, but authorization for this was denied by defendants. Dr. Rivet and Dr. Blanda both testified that if plaintiff did not suffer trauma to the back of the head then it would be difficult to relate the problems in 1988 to the accident in 1986. Likewise, Dr. Rivet felt if plaintiff did not have complaints of headaches within five (5) months of the incident, it would be unlikely that the headaches were related to the accident.
The medical records do not contain any indications that plaintiff initially advised the physicians that he struck his head or neck during the accident; or that he made any early complaints of headaches. His first mention of sustaining a trauma to the head came more than two (2) years after the accident during his examination by Dr. Rivet.
On February 20, 1989, Dr. Blanda examined plaintiff, found no change, and saw no reason for surgical treatment. A few days later, plaintiff was admitted to the hospital after complaints of paralysis. Dr. Blanda and Dr. Clifton Shepherd examined plaintiff in the hospital; and they were unable to find any medical reason for plaintiff's sudden paralysis. Dr. Blanda referred plaintiff for psychological evaluation to Dr. Ted Friedburg who later found plaintiff was mentally sound. Unable to explain plaintiff's pain, Dr. Blanda offered plaintiff surgery on May 1, 1989; although he testified his recommendation regarding surgery would change if evidence showed that plaintiff was physically active and comfortable. Surgery was never performed and Dr. Blanda has not seen plaintiff since the May visit in 1989.
Dr. Shepard, who examined plaintiff in the hospital, found his claims of paralysis to be "anatomically unexplainable," and felt plaintiff's behavior "represented some type of bizarre emotional, psychological reaction." Dr. Shepard concluded if plaintiff actually felt paralyzed, "it could have been the result of some type of drug he was taking, and that's about the only way that [Shepard] could possibly explain this bizarre complaint that he had". He further felt a lumbar fusion was totally unnecessary in plaintiff's case; and that a majority of plaintiff's complaints were simply not valid.
On March 6, 1989, after examining the plaintiff, Dr. Shepard recommended all further treatment, testing, and activity restrictions should be immediately terminated. He felt plaintiff should be allowed to return to work without activity restrictions as a roughneck immediately. As a result of this recommendation, defendants terminated plaintiff's workers' compensation benefits on March 10, 1989.
*677 Additionally, defendants presented a videotape of plaintiff showing him engaged in a number of physical activities, including carrying bags of laundry and garbage, bending over to wash his truck tires, carrying a table on his head, and carrying portions of a bed frame in each hand. Dr. Blanda, who saw the videotape, testified plaintiff's activities on the videotape were inconsistent with plaintiff's complaints.
After fully examining the record, we cannot conclude the trial judge's factual findings as to plaintiff's temporary total disability claim were manifestly erroneous. Bailey v. Zurich American Insurance Co., 503 So.2d 611 (La.App. 4th Cir.1987) and Bailey v. Zurich American Insurance Company and Chalmette General Hospital, Inc., 547 So.2d 734 (La.App. 4th Cir. 1989), writ denied, 552 So.2d 381 (La.1989). The testimony and reports do indicate plaintiff suffered a fracture of the second lumbar vertebrae. However, not one of the physicians who examined plaintiff felt this injury would prevent him from engaging in, at the very least, light duty work. Thus, plaintiff is not entitled to temporary total disability benefits. Savoie v. Fire Protection Dist. 1, 483 So.2d 1041 (La.App. 3rd Cir.1985), writ denied, 485 So.2d 54 (La.1985).

SUPPLEMENTAL EARNINGS CLAIM
Next, we turn to the question of whether plaintiff is entitled to Supplemental Earnings Benefits under La.R.S. 23:1221(3). The trial court noted plaintiff did not put on any evidence regarding his current wage-earning capacity. The trial court then concluded, as a result of this evidentiary failure, plaintiff did not meet his burden of proof in establishing entitlement to Supplemental Earnings Benefits. We disagree and find the trial court improperly assigned the initial burden of proof to the plaintiff rather than to the defendants under the facts presented as required by La.R.S. 23:1221(3).
If the claimant is employed or self-employed, then the burden of proof is on the claimant to prove by a preponderance of the evidence that a work related injury resulted in his inability to earn wages equal to ninety percent (90%) or more of his wages at the time of injury. Clark v. Welex, a Haliburton Co., 517 So.2d 1186 (La.App. 3rd Cir.1987), writ denied, 521 So.2d 1170 (La.1988). However, if the employee is not employed or self-employed or is earning less than he is able to earn, the burden is on the employer to show the employee is physically capable of performing employment which is offered or available. La.R.S. 23:1221(3)(c)(i); Tassin v. Cigna Insurance Co., 583 So.2d 1222 (La. App. 3rd Cir.1991).
Plaintiff has remained unemployed since the date of his work related injury. Thus, the employer had the initial burden of establishing by a preponderance of evidence that plaintiff was capable of performing offered or available employment. Except for a reference in brief to a statement by plaintiff that he would not accept his pre-injury job, defendants did not present any testimony relating to plaintiff's employability. This statement alone, made in response to a hypothetical question posed by the defense, is insufficient to carry defendants' burden by preponderance of the evidence. Defendants did not present any evidence showing that plaintiff was offered a job which he declined to accept or that jobs were available which he did not seek. As a result, the defendants did not meet the burden imposed under La.R.S. 23:1221(3)(c)(i). Consequently, we find plaintiff is entitled to Supplemental Earnings Benefits based upon a zero earnings calculation.

PENALTIES AND ATTORNEY'S FEES
Plaintiff contends he is entitled to penalties and attorney's fees based on defendant's arbitrary and capricious termination of benefits and failure to authorize medical procedures. Regarding the termination of benefits, Dr. Blanda, Dr. Domingue and Dr. Shepard all felt plaintiff could return to some sort of work. Defendants apparently made their decision to terminate benefits after Dr. Shepard's recommendation. Since the decision to terminate was based on competent medical advice, *678 we do not find it arbitrary and capricious. Martin v. H.B. Zachary Co., 424 So.2d 1002 (La.1982).
Furthermore, we do not find error in the trial judge's refusal to award penalties and attorney's fees for defendants' failure to authorize more surgeries. Dr. Domingue and Dr. Blanda both felt the carpal tunnel syndrome was not related to the accident. When questioned, Dr. Rivet also testified that the occipital neuralgia was not related to the accident. Dr. Shepherd testified he did not believe a lumbar fusion was warranted under the circumstances. Although, we recognize this procedure was suggested by Dr. Blanda, his recommendation was tentative in nature and subject to change if evidence established plaintiff was physically active and openly displayed little discomfort in performing his daily activities. Accordingly, we are unable to find the trial court manifestly erred in denying penalties and attorneys fees.

DECREE
For the above and foregoing reasons, the decision of the trial court refusing plaintiff temporary total disability benefits is affirmed. The trial court judgment in part denying plaintiff's claim for Supplemental Earnings Benefits is reversed. Accordingly, we award plaintiff scheduled Supplemental Earnings Benefits from March 10, 1989, using a zero earnings base. The portion of the judgment denying plaintiff's claim for penalties and attorney's fees is affirmed. Cost of this appeal is assessed against appellees.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.