654 So.2d 365 (1995)
Johnny WALKER, Plaintiff-Appellant,
v.
HALLIBURTON SERVICES, INC., Defendant-Appellee.
No. 93-722.
Court of Appeal of Louisiana, Third Circuit.
March 1, 1995.
Order Amending Decree on Rehearing May 15, 1995.
*367 Lawrence N. Curtis, Gregory Karl Klein, Lafayette, for Johnny Walker.
James E. Diaz, Lafayette, for Halliburton Services.
Before LABORDE, COOKS and WOODARD, JJ.
WOODARD, Judge.
This is a workers' compensation case. The issues on remand from the supreme court are: (1) whether the hearing officer improperly took judicial notice of the fact that all soft tissue injuries heal in six weeks; (2) whether plaintiff has disabling symptoms that were caused by the work accident; (3) whether plaintiff is entitled to medical expenses; and (4) whether defendant acted arbitrarily, capriciously, and without probable cause in terminating plaintiff's benefits.

FACTS
On June 13, 1991, the plaintiff, Johnny Walker, who was employed by the defendant, Halliburton Services, Inc. (Halliburton), was injured when he lost his balance while attempting to open a hatch on the tank truck *368 he was driving, falling approximately ten feet, striking a concrete floor. There is no dispute that he suffered disabling injuries to his left elbow, right knee, and both wrists. Halliburton paid Walker $282.00 per week in temporary total disability benefits from June 14, 1991 until September 12, 1991, when Dr. Clifton Shepherd, Jr., an orthopedic surgeon, and Dr. Jack Hurst, a neurological surgeon, released him back to work.
Subsequently, Walker brought this suit alleging that he was disabled from a neck and back injury caused by the work accident, requesting that his benefits be reinstated, and seeking recovery for medical expenses for treatment of these injuries. The hearing officer rendered judgment on April 14, 1993, finding that Walker was not disabled, because in her "experience," the soft tissue injury in his neck and low back should have resolved itself in six weeks. The hearing officer also denied his request for medical expenses, attorney's fees, and penalties.
Walker then appealed to this court, and in affirming the hearing officer's judgment in one paragraph, we stated:
"While we would make a different de novo ruling on this case, we find that the record supports that the hearing officer's holding of no disability regarding the neck and back could be based on her giving more weight to Dr. Shepherd's testimony that he did not believe the neck and back problems were caused by the accident. Thus, we find no manifest error."
Next, Walker applied for a writ to the Louisiana Supreme Court, which was granted. The supreme court set aside our decision, and remanded the case to us for reconsideration and a full opinion. 644 So.2d 627.
On remand, Walker assigns the following assignments of error: The hearing officer erred in (1) taking judicial notice of a fact, which was disputed, and does not form part of the common knowledge of every person of common understanding and intelligence; (2) failing to award temporary total disability benefits and medical expenses; and (3) failing to award attorney's fees and penalties.

LAW

JUDICIAL NOTICE
Walker argues that the hearing officer committed a clear error of law when she took judicial notice of the fact that all soft tissue injuries heal in six weeks. He then asserts that, as a result of this error, we should determine the essential facts of this case de novo. We agree.
Courts can only take judicial notice of a fact that may be regarded as forming part of the common knowledge of every person of ordinary understanding and intelligence, State Block, Inc. v. Poche, 444 So.2d 680 (La.App. 5 Cir.1984), and a fact that is not subject to reasonable dispute, La.Code Evid. art. 201(B). Not only do we believe that the intricate medical knowledge of when a soft tissue injury heals does not meet the former requirement, this fact was clearly in dispute. Dr. Michel E. Heard, an orthopedic surgeon who treated Walker on several occasions, unequivocally testified that while eighty percent of soft tissue injuries heal within eight weeks, twenty percent do not; that Walker's soft tissue injuries in his neck and back had not healed as of August 3, 1992; and therefore, he fell within the latter group. Additionally, Dr. Thomas LaBorde, a specialist in physical medicine and rehabilitation who treated Walker, declared that he still suffered from a soft tissue injury on August 13, 1992, well beyond six weeks after the work accident.
The only finding of material fact that the hearing officer made was that Walker was not disabled, based on her error in taking judicial notice that all soft tissue injuries heal in six weeks; therefore, she never reached the issues of whether Walker's neck and back injuries were caused by the accident, and if so, whether he is entitled to medical expenses to treat these injuries. It is clear that this error was prejudicial because it materially affected the outcome of this case. When such a prejudicial error of law skews the court's finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the *369 essential facts de novo. Lasha v. Olin Corp., 625 So.2d 1002 (La.1993). Since we find that the record is complete, we will review de novo the issues of disability, causation, medical expenses, attorney's fees, and penalties.

DISABILITY/CAUSATION
An employee in a workers' compensation case initially has the burden of proving by a preponderance of the evidence that his employment accident caused his disability. Pelous v. Guidry, 520 So.2d 1042 (La.App. 3 Cir.1987), writ denied, 522 So.2d 565 (La. 1988). In order for an employee to recover, it must be determined that the employment somehow caused or contributed to the disability, but it is not necessary that the exact cause be found. Patterson v. GNB Battery, Inc., 569 So.2d 640 (La.App. 2 Cir.1990), writ denied, 573 So.2d 1134 (La.1991). The issue of disability presents a legal, not purely medical question, which must be determined through a consideration of both lay and medical testimony. Taylor v. Louisiana-Pacific Corp., 602 So.2d 48 (La.App. 3 Cir.), writs denied, 606 So.2d 541, 542 (La.1992). The employee's work accident is presumed to have caused his disability when the employee proves that: (1) before the accident, he had not manifested his disabling symptoms; (2) commencing with the accident, the disabling symptoms appeared; and (3) there is either medical or circumstantial evidence indicating a reasonable possibility of causal connection between the accident and disabling condition. Walton v. Normandy Village Homes Ass'n, Inc., 475 So.2d 320 (La.1985).
In the case sub judice, Walker testified that before the work accident he had worked at Halliburton for about ten years; that during this time he never missed a significant amount of work; and that he was in good health and never suffered from pain in his neck and low back. Immediately after the accident, he was taken by ambulance to the emergency room at Lafayette General Hospital. Walker unequivocally testified that while he was there, his "whole body" hurt, including his neck and low back. He further stated that his neck and back began to hurt "a lot" approximately two weeks later. This is corroborated by the July 1, 1991 report of Manny R. Gala, a physical therapist who treated Walker, stating that he had an "increase in soreness of both upper extremities, right lower extremity, and both scapula regions." The scapula region is the area in the back, just below the neck, where the shoulder blades are located. Mr. Gala also noted in a July 31, 1991 report that Walker had been complaining of an increase in pain in the cervical and lumber region since July 21.
Dr. LaBorde, who first examined Walker on September 10, 1991, stated that he found "trigger points," which are well localized areas of tenderness which indicate myofascial abnormalities, in his neck and low back. Dr. LaBorde's findings were corroborated when Walker later completed a thermogram, which revealed that the pain in his neck and shoulder area was "compatible with muscle spasm or myofasicial abnormality" and that the pain in his low back was "suggestive of an L5 nerve root irritation." Finally, Dr. LaBorde did not hesitate to opine that "in all medical probability," the work accident caused Walker's injuries in his neck and low back.
Dr. Heard, who treated Walker for about four months, diagnosed him with a post-traumatic soft tissue injury to the neck and low back area that was "confirmed by multiple examinations and multiple testing." Dr. Heard clearly stated that if Walker had no preexisting neck or back problems, which the record clearly substantiates, he would opine that the neck and back injury was caused by the work accident.
Once an employee establishes the presumption of a causal relationship, the employer must produce evidence and persuade the trier of fact that it is more probable than not that the injury was not caused by the accident. Walton, supra. The effect of the presumption is not so slight and evanescent that it is spent and disappears upon the mere production of evidence by the employer. Id.
In the case sub judice, Halliburton attempted to rebut the presumption that the work accident caused Walker's neck and low back injury by introducing into evidence the depositions of Drs. Shepherd and Hurst, who released Walker to go back to work on September *370 12, 1991 and August 7, 1991, respectively.
Dr. Shepherd, Halliburton's physician, who treated Walker from the date of the work accident until September 12, 1991, testified that he would not relate Walker's neck and low back pain to the accident because he assumed, based on Mr. Gala's reports, that Walker did not suffer any symptoms of neck and back pain until July 21, more than five weeks after the accident. However, Dr. Shepherd stated that if Walker had the symptoms earlier, which the record substantiates, this "could" change his opinion with respect to causation. Further, Dr. Shepherd candidly admitted that the type of fall which Walker suffered could "easily ... cause neck and/or back injury."
Dr. Hurst did not deny that Walker experienced neck and low back pains; he merely confirmed that he could not find a neurological deficit to explain it. Dr. Hurst also noted that he did not inquire whether there was any type of muscle injury to Walker's neck and low back.
We find that this testimony was not sufficient to rebut the presumption that Walker's neck and low back injury were caused by the work accident.

DISABILITY BENEFITS
The undisputed testimonies of Drs. Heard and LaBorde indicate that Walker is totally disabled from work until he successfully completes a recommended rehabilitation program. Thus, we award him temporary total disability benefits, at the undisputed rate of $282.00 per week, from September 12, 1991 until he successfully completes the rehabilitation program recommended by his treating physicians. See La.R.S. 23:1221(1)(A).

MEDICAL EXPENSES
La.R.S. 23:1203(A) provides, in pertinent part, that "In every case coming under this Chapter, the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any type of nonmedical treatment recognized by the laws of this state as legal,...." Under this statute, a worker's medical expenses are compensable only if they are occasioned by the work related injury. Charles v. Aetna Cas. and Sur. Co., 525 So.2d 1272 (La.App. 3 Cir.), writ denied, 531 So.2d 480 (La.1988). The claimant must establish his claim for medical benefits and show that they are related to the work accident to a reasonable certainty and by a preponderance of the evidence. Id.
In the case sub judice, we find that Walker has proven that his expenses incurred in obtaining treatment from the following health care providers were necessary; namely, (1) Drs. Heard and LaBorde for diagnosis and treatment; (2) the Occupational and Physical Therapy Clinic and the Orthopedic & Sports Physical Therapy Clinic for physical therapy; (3) St. Thomas Diagnostic Center for radiological examinations; (4) Medlog, Inc. which leased him a Tens Unit for relief of pain; and (5) Acadian Ambulance which transported Walker to Lafayette General Hospital on the day of the work accident.
Walker asserts that these medical expenses amount to $16,799.14; however, we conclude that the record only supports an award of $14,466.77. Walker has listed Dr. LaBorde's bill at $3,684.00, but Dr. LaBorde stated that his bill was only $2,780.00. Additionally, Walker listed Occupational & Sports Physical Therapy Clinic's bill at $5,495.37, but we find the actual invoices in the record only support an award of $4,067.00.

ATTORNEY'S FEES AND PENALTIES
It is well settled that a workers' compensation claimant is not entitled to attorney's fees and penalties unless the employer acts arbitrarily, capriciously or without probable cause in terminating benefits. La.R.S. 23:1201; 1201.2. In the case sub judice, Eugene Parks, a workers' compensation claims manager for Halliburton, testified that Halliburton terminated Walker's benefits on September 12, 1991 because (1) Dr. Hurst released him back to work on August 7; and (2) Dr. Shepherd, who felt Walker's neck and low back pains were not related to the accident, released him to go back to work on that day. Subsequent to the termination of benefits, however, Mr. Parks admitted that he received copies of Dr. LaBorde's *371 medical reports which clearly indicated that Walker had disabling symptoms in his neck and low back, and that he needed to undergo rehabilitation. Where subsequent to an initial optimistic report, an employer receives information indisputably showing a claimant to be disabled, the employer cannot rely upon the earlier report to avoid penalties and attorney's fees. Cormier v. Save-Time, Inc., 497 So.2d 404 (La.App. 3 Cir.1986).
At that point, at the least, Halliburton had a duty to further investigate whether Walker's claims of disability were valid. Instead, Halliburton did not act. In choosing a course of inaction following Walker's demand, supported by medical reports evidencing compensable disability, Halliburton acted at its own peril. Id. Therefore, we find that Walker is entitled to attorney's fees and penalties.
Given the extensive time spent on this case, and the number of briefs filed with the hearing officer, this court, and the supreme court, we feel Walker is entitled to an award of $7,500.00 in attorney's fees. Additionally, Halliburton is assessed with statutory penalties of twelve percent of the total amount of past due temporary total disability benefits.

CONCLUSION
For the foregoing reasons, the judgment of the hearing officer is reversed and set aside. It is ordered, adjudged, and decreed that Johnny Walker is entitled to: (1) temporary total disability benefits in the amount of $282.00 per week from September 12, 1991 until he successfully completes a recommended rehabilitation program; (2) medical expenses of $14,466.77; (3) an award of attorney's fees of $7,500.00; and (4) statutory penalties of twelve percent of the total amount of past due temporary total disability benefits. Finally, it is ordered that all costs at the trial level and on appeal be borne by Halliburton.
REVERSED AND RENDERED.

ON REHEARING
PER CURIAM.
Our former decree is amended to read as follows: Plaintiff, Johnny Walker, is entitled to legal interest on (1) each installment of disability benefits from the installment's due date until paid and (2) medical expenses, attorney's fees, and penalties from the date of judicial demand until paid. Chisholm v. L.S. Womack, Inc., 424 So.2d 1138 (La.App. 1 Cir.1982); LeDoux v. Robinson, 568 So.2d 244, 248 (La.App 3 Cir.1990); Watson v. Louisiana Paving Company, 441 So.2d 31 (La.App. 3 Cir.1983).
In all other respects, our original decree is affirmed.