608 So.2d 999 (1992)
Clyde A. BOWENS
v.
GENERAL MOTORS CORP. et al.
Nos. 92-C-1307, 92-C-1322.
Supreme Court of Louisiana.
November 30, 1992.
Rehearing Denied January 28, 1993.
*1000 Frank M. Walker, Jr., Lunn, Irion, Johnson, Salley & Carlisle, Shreveport, for applicant.
Russell L. Potter, James D. Kirk, Andrew P. Texada, Stafford, Stewart & Potter, Roy S. Halcomb, Jr., Broussard, Bolton, Halcomb & Vizzier, Alexandria, for respondent.
MARCUS, Justice.
Clyde Bowens was a truck driver employed by Bonded Freight Service, Inc. (Bonded). Bonded had been hired by General Motors Corporation (GM) to transport parts from manufacturing plants in Michigan to its assembly plant in Shreveport, Louisiana. On February 5, 1989, Bowens was en route to Shreveport after picking up a load of engines from the GM plant in Romulus, Michigan, and was involved in an accident near Plain Dealing, Louisiana, in which he slid into the back of an eighteen wheeler after attempting to stop on an icy road. After the accident, he suffered injuries to his neck, shoulders, arms, lower back and left leg.
On March 14, 1989, Bowens' attorney sent a letter to Bonded and GM demanding payment of worker's compensation benefits. When no benefits were paid, Bowens filed a claim with the Office of Worker's Compensation. On May 26, 1989, the Office of Worker's Compensation found that Bowens' injury was work related and recommended that Bowens be paid compensation for temporary total disability, together with related expenses. Penalties and attorney fees were assessed against GM. Between May 23, 1989 and June 14, 1989, Bowens received three payments of compensation from Bonded.
On July 21, 1989, after receiving no further payments, Bowens filed a petition for worker's compensation benefits against GM, Bonded and the Louisiana Insurance Guaranty Association (LIGA), which stood in place of Bonded's worker's compensation *1001 insurer, Anglo-American Insurance Co.[1] Prior to trial, the proceedings against Bonded were stayed due to its bankruptcy. The case proceeded to trial against GM and LIGA.
After trial, the court rendered judgment in favor of plaintiff and against LIGA, finding plaintiff to be temporarily totally disabled and ordering LIGA to pay plaintiff disability benefits together with related expenses. The judgment further ordered LIGA to pay penalties and attorney fees. Plaintiff's suit against GM was dismissed on a finding that GM was not his statutory employer. Plaintiff's motion for a new trial was denied. Plaintiff and LIGA appealed. The court of appeal reversed, holding the trial court erred in finding GM was not plaintiff's statutory employer.[2] The court set aside the judgment against LIGA, and recast the judgment to order GM to pay plaintiff disability benefits together with related expenses. The judgment also awarded plaintiff penalties and attorney fees against GM. Separate applications were made to this court by GM and plaintiff. We granted certiorari and ordered the applications consolidated.[3]
The issues presented for our consideration are (1) whether GM is plaintiff's statutory employer and thus liable to him for compensation benefits; (2) whether LIGA is liable for payment of compensation benefits to plaintiff; and (3) whether LIGA and/or GM are liable to plaintiff for penalties and attorney fees.

I. Statutory Employer

Under La.R.S. 23:1061, whenever a person fits the definition of a principal (commonly known as a statutory employer), he shall be obligated by the worker's compensation statute to the injured employees of his contractors.[4]Lewis v. Exxon Corp., *1002 441 So.2d 192 (La.1983) (on rehearing). In Berry v. Holston Well Service, Inc., 488 So.2d 934 (La.1986), we set forth a three tier analysis to determine the existence of a statutory employment relationship. The first level focused on whether the contract work is specialized or non-specialized. If the work is specialized per se, the work cannot be part of the principal's trade, business or occupation. If the work is non-specialized, "the inquiry shifts to a comparison of the principal's trade, business or occupation and the contract work to see if the latter can be considered a part of the principal's trade, business or occupation." Id. at 938. The Berry court set out three guidelines in this area: (1) is the contract work routine and customary; (2) does the principal have the equipment and/or manpower capable of performing the contract work; (3) what is the practice in the industry relative to the contract work. Finally, the court must determine if the principal was engaged in the work at the time of the alleged accident.
In the present case, the trial court initially held that truck driving was specialized per se, and as a result, GM was not plaintiff's statutory employer. Plaintiff moved for a new trial on this issue. The court concluded it was in error in finding truck driving was specialized per se. Nonetheless, the court held it reached the correct result in finding GM was not plaintiff's statutory employer, since it found that the contract work of interstate transportation of engines was not part of GM's trade, business or occupation. The court of appeal agreed that truck driving was not specialized per se, but found the trial court erred in finding GM was not plaintiff's statutory employer under Berry:
Reviewing these factual circumstances in conjunction with the Berry analysis, it is clear the interstate transportation of parts is a routine and customary part of GM's business that is performed on a regular basis. In addition, while GM chooses to hire independent trucking companies for their interstate deliveries, they are capable of performing this contract work with their own equipment and manpower. Therefore, we find the interstate transportation of parts is a part of GM's regular business. The practice in the industry ranges from minimal interstate transportation to extensive interstate transportation. Thus, it is common in the industry for the companies to participate in interstate transportation. Lastly, we find, based upon the evidence, GM was involved in this type of work at the time of plaintiff's accident.
596 So.2d at 248 (citations omitted).
Having reviewed the record, we find no error in the court of appeal's conclusion that GM was plaintiff's statutory employer and therefore liable to him for compensation benefits.

II. Liability of LIGA

There is no dispute that LIGA stands in place of Anglo-American, Bonded's insolvent worker's compensation insurer. Under La.R.S. 22:1382(A)(2), LIGA is "deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent." Therefore, it appears LIGA (standing in place of the insurer for plaintiff's immediate employer) and GM (as plaintiff's statutory employer) should be cast in judgment in solido, with GM given indemnity rights against LIGA.[5] As the court in Jones v. Southern Tupelo Lumber Co., 257 La. 869, 244 So.2d 815, 817 (1971), stated:
The courts below correctly cast all of the defendants solidarily, for when an employee is entitled to compensation and under R.S. 23:1061 or R.S. 23:1063 has sued the principal or the principal contractor together with the contractor or subcontractor, the liability of such defendants *1003 is solidary. The purpose of these statutes is to expand financial responsibility and to prevent the evasion of the workman's compensation law by the principal's or the principal contractor's interposing between himself and the employee an impecunious contractor or subcontractor. Under these statutes the claimant is entitled to proceed against the principal (or principal contractor) or the contractor (or subcontractor) or both as he chooses. The indemnification clauses, however, have the effect of finally imposing the loss of the principal or principal contractor upon the claimant's immediate employer.
However, LIGA argues that the "nonduplication of recovery" provision set out in La.R.S. 22:1386(1) makes it liable only if and when plaintiff exhausts the benefits available to him from GM. At the time of this case, La.R.S. 22:1386(1) provided:
§ 1386. Nonduplication of recovery
(1) Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, shall be required to exhaust first his right under such policy. Any amount payable on a covered claim under this Part shall be reduced by the amount of any recovery under such insurance policy. [emphasis added].
In the present case, it was stipulated by the parties that GM was self-insured for worker's compensation purposes.[6] LIGA concedes that the statute uses the word "policy," but argues that the distinction is only a matter of semantics and there is no practical difference between GM providing its own worker's compensation coverage or purchasing that coverage in a policy. We disagree. This court has held that "self-insurance is, in actuality, not insurance at all." Hearty v. Harris, 574 So.2d 1234, 1237 (La.1991). Interpreting the Louisiana Motor Vehicle Safety Responsibility Law (LMVSRL), we held that self-insurance was merely one of the four methods of meeting the requirements of that law, but was not the same as an insurance policy: "[w]hile Louisiana courts have consistently recognized that a certificate of self-insurance indicates the self-insurer possesses sufficient assets to satisfy judgments if found legally liable, the courts have refused to consider a certificate of self-insurance an insurance `policy.'" Id. at 1238. See also Jones v. Henry, 542 So.2d 507 (La.1989); Jordan v. Honea, 407 So.2d 503 (La.App. 1st Cir.1981), writ denied, 409 So.2d 654 (La.1982). While it is true those cases involved self-insurance under the provisions of the LMVSRL, we see no practical difference between self-insurance under that statute and self-insurance under the worker's compensation law as set forth in La. R.S. 23:1181.[7] Self-insurance is simply one method of complying with La.R.S. 23:1181; it is not the equivalent of an insurance policy. The language of La.R.S. 22:1386 is unambiguous: it applies only to those persons having claims "against an insurer under any provision in an insurance policy." [emphasis added]. Clearly, plaintiff's claim against GM is not against an "insurer," nor is it based on an insurance policy.
*1004 Further, were we to adopt LIGA's expansive definition of insurance as including self-insurance, the effect would be to protect LIGA, while impairing plaintiff's rights to seek benefits from LIGA. Such a holding would run counter to the principle that the "provisions of the Insurance Guaranty Association Act must be interpreted to protect claimants and policyholders and to advance their interests rather than the interests of the association." Senac v. Sandefer, 418 So.2d 543, 546 (La.1982); Hickerson v. Protective National Ins. Co., 383 So.2d 377 (La.1980). In the absence of an express legislative pronouncement to the contrary, we hold that the presence of a self-insurer does not preclude liability on the part of LIGA to plaintiff for compensation benefits.

III. Penalties and Attorney Fees

La.R.S. 23:1201(E) provides for penalties against the employer or his insurer for failure to pay worker's compensation benefits,[8] and La.R.S. 23:1201.2 provides for attorney fees against the employer or his insurer for failure to pay benefits.[9]
LIGA argues that it should not be required to pay penalties and attorney fees imposed on the insolvent insurer since these are not "covered claims" under La. R.S. 22:1382(1)(a). We agree. La.R.S. 22:1382(1)(a) & (b) provide that LIGA shall "be obligated to the extent of covered claims " and be "deemed the insurer to the extent of its obligations on the covered claims...." [emphasis added]. At the time of this case, La.R.S. 23:1379(3) defined "covered claims" as "an unpaid claim, including one for unearned premiums, which arises out of and is within the coverage and not excess of the applicable limits of an insurance policy to which this Part applies...."[10] In Cantrelle Fence and Supply Co. v. Allstate Ins. Co., 515 So.2d 1074, 1079 (La.1987), we held that an obligation arising out of a penalty statute "is separate and distinct from the obligation arising out of the contractual relationship under the insurance policy." It follows, therefore, that any obligation imposed on the insolvent insurer for penalties and attorney fees is separate from its contractual obligations arising out of the policy, and this obligation falls outside of the definition of covered claims for which LIGA is liable, as set forth in La.R.S. 22:1382. See Williams v. Champion Ins. Co., 590 So.2d 736 (La.App. 3rd Cir.1991); Breaux v. Klein, 572 So.2d 656 (La.App. 5th Cir.1990), writ denied, 573 So.2d 1140 (La.1991).
LIGA further argues it should not have to pay penalties and attorney fees for its own actions, since it is not an "insurer" for purposes of the statutes imposing penalties and attorney fees. We agree. By their clear language, La.R.S. 23:1201(E) *1005 and La.R.S. 23:1201.2 are applicable only to the employer and his insurer. LIGA is not an insurer, but is, as defined in La.R.S. 22:1379(1), an "association" created under La.R.S. 22:1380. That statute provides:
There is created a nonprofit unincorporated legal entity to be known as the Insurance Guaranty Association, whose domicile for purpose of suit shall be East Baton Rouge Parish, Louisiana. All insurers defined as member insurers in R.S. 22:1379 shall be and remain members of the association as a condition of their authority to transact insurance in this state. The association shall perform its functions under a plan of operation established and approved under R.S. 22:1383 and shall exercise its powers through a board of directors established under R.S. 22:1381. [emphasis added].
In interpreting La.R.S. 23:1201(E) and La. R.S. 23:1201.2, we bear in mind that it is "the universally recognized rule of law that statutes imposing penalties must be strictly construed and every doubt must be resolved against the imposition of the penalty." Tichenor v. Tichenor, 190 La. 77, 181 So. 863, 864 (1938); Gros v. LeBlanc, 304 So.2d 49 (La.App. 1st Cir.1974). We are unable to say, under a strict construction of La.R.S. 23:1201(E) and La.R.S. 23:1201.2, that LIGA is an insurer for purposes of penalties and attorney fees. Accordingly, we hold that LIGA is not liable for penalties and attorney fees, either as a covered claim or as a result of its own actions.
Finally, we address GM's liability for penalties and attorney fees. GM argues it should not be held liable for penalties and attorney fees since the case involved a "substantial issue" as to its status as statutory employer. In support of the reasonableness of its position, GM notes that the trial court held in its favor and found it not to be plaintiff's statutory employer. GM also argues that even assuming its statutory employer status, there was still an issue as to whether LIGA should pay first. We agree that an employer who has reasonable grounds to controvert the plaintiff's claim does not owe penalties and attorney fees. Williams v. Regional Transit Authority, 546 So.2d 150, 161 (La.1989). In the present case, however, we believe the facts are strong enough to make it unreasonable for GM to refuse to pay benefits on the ground that it was not plaintiff's statutory employer. Further, the mere fact that GM believed LIGA should pay first is not a reasonable ground for its failure to pay benefits. As stated by Judge (now Justice) Hall in Demery v. Dupree, 511 So.2d 1268, 1273 (La.App. 2d Cir.1987), "a dispute between the statutory and regular employer as to which owes compensation benefits is not a justifiable basis for withholding benefits from the injured employee." See Guillot v. Guillot, 445 So.2d 1270 (La.App. 3rd Cir.1984); Fontenot v. Town of Kinder, 377 So.2d 554 (La.App. 3rd Cir.1979), writ denied, 379 So.2d 1102 (La.1980); see also Humphreys v. Marquette Casualty Co., 235 La. 355, 103 So.2d 895 (1958). Therefore, we find the court of appeal correctly assessed penalties and attorney fees against GM.[11]

Conclusion
In sum, we find GM is plaintiff's statutory employer and is liable to him for compensation benefits. Since we find the "nonduplication of recovery" provision relied on by LIGA is inapplicable to a self-insured employer such as GM, we hold that LIGA is liable in solido with GM to plaintiff for compensation. We hold that LIGA is not liable for penalties and attorney fees imposed on the insolvent insurer, as these are not covered claims, nor is it responsible for penalties and attorney fees for its own actions, since it is not an insurer for purposes of these statutes. Finally, we hold penalties and attorney fees were properly assessed solely against GM.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed insofar as it dismisses plaintiff's demands against the Louisiana Insurance Guaranty Association. The judgment is amended to hold the Louisiana Insurance Guaranty Association and *1006 General Motors Corp. liable in solido to plaintiff for all amounts previously assessed solely against General Motors Corp. in the judgment of the court of appeal including interest and costs, but excluding penalties and attorney fees, which remain assessed solely against General Motors Corp., and reserving to General Motors Corp. any rights it may have pursuant to La.R.S. 23:1061 against the Louisiana Insurance Guaranty Association for indemnity for worker's compensation benefits. In all other respects, the judgment of the court of appeal is affirmed.
CALOGERO, C.J., concurs.
DENNIS, J., concurs in the result.
CALOGERO, Chief Justice, concurs.
I agree with the opinion and resolution of this case by the majority with one exception. I do not join in the majority's determination that LIGA cannot be liable for penalties and attorney's fees for its own arbitrary and capricious actions.
NOTES
[1] The parties stipulated that at all times pertinent, Anglo-American had a policy of worker's compensation insurance in full force and effect which provided full coverage for all benefits being claimed, that after Bowens' accident, Anglo-American became insolvent and an order of liquidation was entered against it and that at all times pertinent, Anglo-American was a member of LIGA.
[2] 596 So.2d 243 (La.App. 3rd Cir.1992).
[3] 600 So.2d 593, 594 (La.1992).
[4] At the time of the accident, La.R.S. 23:1061 provided:

Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.
Where the principle is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor.
On January 1, 1990 (after the date of this accident), the statute was amended to add the following language to the end of the first paragraph of the statute:
The fact that work is specialized or nonspecialized, is extraordinary construction or simple maintenance, is work that is usually done by contract or by the principal's direct employee, or is routine or unpredictable, shall not prevent the work undertaken by the principal from being considered part of the principal's trade, business, or occupation, regardless of whether the principal has the equipment or manpower capable of performing the work.
This amendment apparently broadens the definition of statutory employers. However, given the facts of the present case, we believe the outcome would be the same under the amended statute as under the pre-amendment statute. Therefore, we do not pass on the question of whether the 1990 amendment is retroactive, although we note that the appellate courts addressing the issue have uniformly held the amendment is not retroactive. Young v. Lyons Petroleum, Inc., 598 So.2d 702 (La.App. 3rd Cir. 1992); Carter v. Chevron Chemical Co., 593 So.2d 942 (La.App. 4th Cir.1992), writ denied, 596 So.2d 211 (La.1992); Bourgeois v. Puerto Rican Marine Management, Inc., 589 So.2d 1226 (La.App. 4th Cir.1991), writ denied, 592 So.2d 1299, 1300 (La.1992); Fountain v. Central Louisiana Electric Co., 578 So.2d 236 (La.App. 3rd Cir.1991), writ denied, 581 So.2d 707 (La.1991). Contra Brock v. Chevron Chemical Co., 750 F.Supp. 779 (E.D.La.1990).
[5] Although GM has not yet sought indemnity from LIGA, we note that under the second paragraph of La.R.S. 23:1061, it may be entitled to indemnity from LIGA for any compensation benefits it is required to pay to plaintiff.
[6] The stipulation provided: "General Motors Corporation at all times pertinent hereto was a qualified self-insurer in the State of Louisiana for workmen's compensation purposes, as approved by the Louisiana Insurance Rating Commission."
[7] At the time of this case, La.R.S. 23:1181 (security for payment of compensation benefits; insurance or deposit required) provided in pertinent part:

Every employer, corporate or otherwise, not domiciled in Louisiana, who does not own immovable property within this state assessed at one hundred thousand dollars, and who shall be liable under this Chapter for the payment of worker's compensation to his employees, shall furnish security for the payment of compensation to his employees in one of the following ways:
(1) By taking out and carrying, with an insurance carrier authorized to engage in the business of writing policies of worker's compensation insurance in this state, a policy designed to insure the payment of any claims for compensation hereunder; or
(2) By furnishing satisfactory proof to the Louisiana Insurance Rating Commission of the financial ability to pay compensation for himself.... The employer qualifying under this Sub-part shall be known as a self-insurer.
[8] La.R.S. 23:1201(E) provides in pertinent part: If any installment of compensation payable without an order is not paid within the time period provided in Subsections (B), (C), or (D) of this Section, there shall be added to such unpaid installment a penalty of an amount equal to twelve percent thereof, which shall be paid at the same time as, and in addition to, such installment of compensation, unless such nonpayment results from conditions over which the employer or insurer had no control. Whenever the employee's right to such benefits has been reasonably controverted by the employer or his insurer, the penalties set forth in this Subsection shall not apply. The twelve per cent additional payment shall be assessed against either the employer or the insurer, depending upon who was at fault in causing the delay.
[9] La.R.S. 23:1201.2 provides in pertinent part: Any insurer liable for claims arising under this Chapter, and any employer whose liability for claims arising under this Chapter is not covered by insurance, shall pay the amount of any claim due under this Chapter within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the employer or insurer, in addition to the amount of the claim due, to payment of all reasonable attorney's fees for the prosecution and collection of such claim....
[10] On June 29, 1990, La.R.S. 22:1379 was amended to provide:

(d) "Covered claim" shall not include any claim based on or arising from a pre-insolvency obligation of an insolvent insurer, including but not limited to contractual attorneys' fees and expenses, statutory penalties and attorneys' fees, court costs, interest and bond premiums, or any other expenses incurred prior to the determination of insolvency. [emphasis added].
[11] Of course, GM may not seek indemnity from LIGA for penalties and attorney fees.