**Alex HARRISON, et al.,**

v.

**ETHYL CORPORATION.**

**Civ. A. No. 91–735–A.**

United States District Court,
M.D. Louisiana.

May 6, 1993.

---

Robert H. Harrison, Jr., Denham Springs, LA, for plaintiffs Alex Harrison & Addie Marie Harrison.

David M. Vaughn, Troy J. Charpentier, Powers, Vaughn, Clegg, Guerry & Willard, Robert Dean Hoover, Hoover & Collins, Baton Rouge, LA, for defendant Ethyl Corp.

## RULING ON MOTION FOR SUMMARY JUDGMENT

JOHN V. PARKER, Chief Judge.

This matter is before the court on a motion by defendant, Ethyl Corporation, for summary judgment. (Although Earl McAllister, Inc., a third party defendant, initially joined in this motion, it is now no longer a party to this suit as a result of a dismissal of Ethyl's third party demand against it.) Oral argument was heard on February 4, 1993, after which the parties were given time to submit supplemental briefs. Only the defendant has done so. Removal jurisdiction is allegedly based upon diversity of citizenship.

Plaintiff, Alex Harrison, seeks damages for personal injuries allegedly sustained on December 4, 1990, while working at defendant's plant located in Baton Rouge, Louisiana. He alleges that he was struck by the loading arm of an A-frame air hoist being used by himself

and a co-employee to lift the lids on railroad tank cars in preparation for cleaning, repairing, refurbishing, and recertifying the cars. At the time of the accident, plaintiff was employed by Earl McAllister, Inc. (EMI), a contractor, which had initially been hired by Ethyl Corporation in 1980 to perform brick and masonry work at its Baton Rouge plant but whose work had substantially changed as of the time of the accident as a result of the shutdown of the plant's production facility in 1985. Defendant moves for summary judgment on the basis that it is plaintiff's statutory employer.

■ Louisiana Revised Statute 23:1061 sets forth the standard which must be satisfied in order for a principal to avail itself of the statutory employer defense. Under § 1061, a principal who contracts with another (the "contractor") to perform work that is part of the principal's trade, business or occupation will be liable under the worker's compensation laws to the contractor's employees as if the principal were the direct employer of the injured employee. If the principal is the statutory employer, plaintiff's exclusive remedy for work-related injuries is worker's compensation and the principal is immune from tort liability. La.R.S. 23:1032.

Prior to January 1, 1990, the analysis used by Louisiana courts to determine whether a principal was a statutory employer involved a stringent three-step inquiry set forth by the Louisiana Supreme Court in *Berry v. Holston Well Service, Inc.*, 488 So.2d 934 (La. 1986). However, the continued applicability of the *Berry* test was brought into question by a 1989 legislative amendment to § 1061 (effective January 1, 1990) in which the following sentence was added:

> The fact that work is specialized or nonspecialized, is extraordinary construction or simple maintenance, is work that is usually done by contract or by the principal's direct employee, or is routine or unpredictable, shall not prevent the work undertaken by the principal from being considered part of the principal's trade, business, or occupation, regardless of whether the principal has the equipment or manpower capable of performing the work.

This amendment broadens the definition of statutory employer and constitutes a legislative overruling of the *Berry* test as the sole determinant of whether a principal does or does not qualify as a statutory employer. As has been noted by the Fifth Circuit, "[t]he 1989 amendment undoubtedly marks a shift back to the liberal application of the statutory employer defense." *Salsbury v. Hood Industries, Inc.*, 982 F.2d 912, 916 (5th Cir. 1993).

■ Although there is sparse Louisiana jurisprudence construing the amendment to § 1061, the focus of the statutory employer determination continues to be whether the work for which the contractor is hired is part of the trade, business, or occupation of the principal. In making this determination, the specific task being performed by the individual employee does not control. Rather, the entire scope of the work for which the contractor was hired must be considered. *Lewis v. Exxon Corp.*, 441 So.2d 192 (La.1983) citing *Malone, Principal's Liability for Workmen's Compensation to Employees of Contractors*, 10 La.L.Rev. 25, 39 (1949) (*Malone*).

■ Thus, it logically follows, and the parties agree, that if a majority of the work being performed by EMI at the time of plaintiff's accident falls within defendant's "trade business or occupation", then the performance of tasks by EMI which do not fall within defendant's trade would not prevent the classification of defendant as plaintiff's statutory employer. Or, as the converse was explained by Professor Malone in the above cited law review article, "[p]resumably . . . if the major part of the contracted work is clearly outside the principal's regular operations, [the statutory employer defense] would not be made applicable merely because the agreement also included minor particulars which could be regarded as falling within the scope of defendant's regular business." *Malone*, supra.

It is undisputed that the "trade, business, or occupation" of defendant is the production and sale of chemicals. It is also undisputed that EMI performed a variety of tasks for defendant and that some of these tasks clearly fall within defendant's trade while others do not. Although the court had considerable

difficulty in obtaining from the parties the relevant factual information necessary to make the statutory employer determination, defendant eventually submitted wage records from 1990 (the year in which plaintiff was injured) which indicate the number of hours worked by EMI employees in each of the various tasks performed at defendant's Baton Rouge plant. The total number of hours worked exceeds thirty eight thousand. According to the affidavit of Earl McAllister, president of EMI, defendant required that weekly wage records be submitted by EMI reflecting the particular activity being performed by each EMI employee. Thus, these wage records contain the necessary information to determine whether a majority of that work falls within or without the trade of defendant.

■ One of the major tasks being performed by employees of EMI at the time of plaintiff's accident was the operation of defendant's tank car clean out facility. This facility was being operated to clean, repair, and recertify railroad tank cars being used by defendant, in part, to transport chemicals throughout the country. Although the Baton Rouge plant no longer produced chemicals after 1985, at the time of plaintiff's accident, it was the only North American Ethyl location at which a tank car clean out facility was being operated. Transportation of a manufacturer's finished product has been held to be "an integral part" of the manufacturer's business. *Bowens v. General Motors Corp.,* 608 So.2d 999 (La.1992); *Begnaud v. Pedestal Crane, Inc.,* 408 So.2d 24 (La.App. 3 Cir.1981). Consequently, operation of a facility to maintain the fleet of railroad cars needed to transport the manufacturer's product also falls within the parameters of the manufacturer's business.

■ From a review of the records submitted, it is clear that over nineteen thousand hours worked by EMI employees during 1990 were dedicated to activities related to the operation of defendant's tank car clean out facility. In addition to the hours spent working on "Houston tank cars", "SLOI tanks", "MMT cars" and "Dordoecht tanks," EMI employees operated and repaired defendant's "B furnace" and "rotary furnace" which were used to process the "sludge" removed from tank cars which had been cleaned.

A second area in which EMI employees performed a substantial amount of work during 1990 consists of providing day-to-day support services at defendant's research and development center at the Baton Rouge plant. Despite the shutdown of the production facility in 1985, defendant continued to operate the research and development center at the Baton Rouge site. The function of the center was to research, test, and produce new chemical products so that samples of new products could be distributed to potential customers.

EMI employees performed over 8000 hours of work in the research and development center during 1990. The work included janitorial service, mail delivery service, and general labor. Support services such as these are generally viewed as "routine", "customary", and "regular" to the business being run by a principal, and thus, a part of its "trade, business, or occupation." See, for example, *Solomon v. United Parcel Service, Inc.,* 539 So.2d 715 (La.App. 3 Cir.1989) (housekeeping duties); *Locker v. Wilson,* 536 So.2d 441 (La.App. 2 Cir.1988) (manual labor).

Without having to itemize the remaining hours reflected on EMI wage sheets, the above hours relating to the tank car clean out facility and support of the research and development center alone comprise over 70% of the total hours worked by EMI in 1990. When viewed from a "majority-minority" perspective, a clear majority of EMI hours were spent performing work which indisputably falls within defendant's trade; thus, defendant is appropriately classified as plaintiff's statutory employer notwithstanding the nature of the remaining tasks which derive from a minority of the hours of work performed by EMI employees. Therefore, plaintiff is limited to recovery in worker's compensation benefits and is precluded from suing defendant in tort.

Accordingly, the motion by Ethyl Corporation for summary judgment based on its status as plaintiff's statutory employer is

hereby GRANTED and this action will be dismissed.