JjDECUIR, Judge.
The Avoyelles Parish School Board and its insurer, the Louisiana Insurance Guaranty Association, appeal a judgment of the Office of Workers’ Compensation Administration, awarding Mary Basco supplemental earnings benefits as well as penalties and attorney’s fees. The School Board and LIGA contend that the administrative law judge erred in finding that (1) Basco had carried her initial burden of proving her inability to earn 90% of her pre-accident wages; (2) the School Board failed to carry its burden of proving generally available suitable employment in the geographic area; and (3) LIGA is liable for penalties and attorney’s fees. We affirm in part and reverse in part.

FACTS

On January 20, 1989, Mary Basco sustained an injury in the course and scope of her employment with the School Board. hShe was working as a cafeteria cook and injured her back when she twisted while lifting a heavy pan of steaming potatoes.
Dr. John Lemoine, Baseo’s family physician, treated her from January 20, 1989 *684 through July 10, 1989, for low back pain, gastritis caused by anti-inflammatory medication for the back, and unrelated depression. He saw her again on August 14, 1990.
On April 5, 1989, Dr. Lemoine noted that Basco should stay off work. On May 9,1989, he noted that Basco’s complaints were worse. On August 14,1990, Dr. Lemoine noted similar complaints and encouraged Basco to light activity but restricted bending and lifting. At no time did Dr. Lemoine release Basco to work nor was he requested to express an opinion on disability.
During the course of his treatment of Bas-co, Dr. Lemoine referred her to Dr. John Patton, a neurosurgeon. Dr. Patton saw Basco from March 27, 1989 through May of 1990, and again on January 16, 1991. Dr. Patton recommended conservative treatment, including a lumbosacral support for the back, physical therapy, pain medicine and a muscle relaxer. In May 1989, after a myelogram, Dr. Patton diagnosed a disc bulge at L4-5 and concurred in the recommendation of a physical therapist that a comprehensive spine program was needed. In addition, Dr. Patton completed a physical capacities assessment at defendants’ request.
This assessment indicated that Basco could lift up to 20 pounds occasionally. She could also stand, walk, sit and drive 1 to 4 hours a day, but never bend. She could squat, crawl, climb and reach occasionally as well as do repetitive physical tasks using her limbs. As of October 19, 1989, Dr. Patton also felt Basco could perform sedentary tasks.
As of January 1990, Dr. Patton believed Basco would have chronic back pain but surgery was not necessary. In addition, he felt that she could do light work. In May 1990, noting that Basco could perform housework and work in the garden, Dr. Patton thought she could do telephone solicitation work. At the time, she had seen no doctor for 4 months, was taking no medication, and was under no doctor’s care.
Is Neither doctor felt that Basco was malingering. Dr. Patton felt, rather, that her case had been mishandled and allowed to slide for 2 years because the work hardening/comprehensive spine program he and the physical therapist recommended had not been approved.
Defendants hired a rehabilitation counselor who located 5 jobs available within the community and within Dr. Patton’s restrictions. Basco followed up on. none of these nor did she seek employment on her own.

SUPPLEMENTAL EARNINGS BENEFITS

To qualify for Supplemental Earnings Benefits, a claimant must prove by a preponderance of the evidence that a work related injury resulted in his inability to earn wages equal to 90% or more of his wages at the time of injury. Daigle v. Sherwin-Williams Co., 545 So.2d 1005 (La.1989); Tassin v. Cigna Ins. Co., 583 So.2d 1222 (La. App. 3d Cir.1991); Clark v. Welex, a Hali-burton Co., 517 So.2d 1186 (La.App. 3d Cir.), writ denied, 521 So.2d 1170 (La.1988). The next step in the analysis is an examination of what the employee is earning or is able to earn. LSA-R.S. 23:1221(3)(c)(i); Daigle, supra. The most logical interpretation of this provision is that the employer, if he wishes to contend that the employee is earning less than he is able to earn, bears the burden of proving that the employee is physically able to perform a certain job and that the job was offered to the employee or is available to the employee in his or the employer’s community or reasonable geographic region. Daigle, supra; Hebert v. Grey Wolf Drilling, 611 So.2d 674 (La.App. 3d Cir.1992); Tassin, supra; Clark, supra.
The School Board and LIGA contend that the hearing officer erred in finding that Bas-co had carried her burden of proof and that they had failed to carry theirs. We disagree.
The trial court’s determination of factual issues, including causation, should be reversed only upon a finding of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Great weight is afforded the trier of fact’s findings |4on credibility of claimants in workers’ compensation cases and findings of disability should not be disturbed on appeal unless there is an absence of a reasonable basis for the findings or unless the findings are clearly wrong. Val *685 ley v. American Ins. Co., 510 So.2d 449, 454 (La.App. 3d Cir.), writ denied, 514 So.2d 130 (La.1987).
The Louisiana Supreme Court has explained the “manifest error” rule in the context of situations where there has been conflicting testimony as follows:
[W]here there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. In applying the manifestly erroneous— clearly wrong standard to the findings below, appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo.
When findings are based on determinations regarding the credibility of witnesses, the manifest error — clearly wrong standard demands great deference to the trier of fact’s finding, for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said.
Rosell v. Esco, 549 So.2d 840, 844 (La.1989) (citations omitted). The court also explained that under this standard an appellate court may find manifest error where documents or objective evidence so contradict a witness’ story that the credibility determination is clearly wrong. However, the court limited this authority to those rare situations, stating: “But where such factors are not present, and a factfinder’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.” Rosell, supra at 845.
In the present case the hearing officer’s finding that Basco carried her burden of proving that she is unable to earn 90% of her pre-accident wage is supported by the medical evidence. Likewise, the finding that the efforts of the School | sB oar d and LIGA to establish the availability of jobs in the geographic area were inadequate is reasonable and supported by the record. Accordingly, we find no error in the hearing officer’s rulings regarding supplemental earnings benefits.

PENALTIES AND ATTORNEY’S FEES

By their remaining assignment, defendants contend that the hearing officer erred in awarding penalties and attorney’s fees against LIGA. We agree.
The Supreme Court has recently addressed the question of LIGA’s liability for penalties and attorney’s fees under the worker’s compensation statute. See Bowens v. General Motors Corp., 608 So.2d 999 (La. 1992). In the first place, LIGA is not an “insurer” under the statutes, but rather an “association” created by special statute. Bowens, supra. Statutes with penalties are to be strictly construed. Tichenor v. Tichenor, 190 La.77, 181 So. 863 (La.1938). As the penalty provision of the worker’s compensation act are specifically addressed to insurers and employers, they cannot be expanded to apply to the conduct of LIGA. Bowens, supra. Thus, there is no authority for assessing LIGA with penalties and attorney’s fees either as a representative of the insolvent insurer or as a result of its own action. Bowens, supra. The hearing officer was clearly wrong in assessing penalties and attorney’s fees against LIGA.

CONCLUSION

For the reasons expressed, the judgment is affirmed insofar as it awards supplemental earnings benefits. The judgment is reversed insofar as it awards penalties and attorney’s fees. All costs are assessed against defendants-appellants.
Affirmed in Part; Reversed in Part.