| GERALD J. CALOGERO | * | NO. 2019-CA-0347 |
| VERSUS | * | COURT OF APPEAL |
| USAGENCIES CASUALTY INSURANCE COMPANY, INC. | * | FOURTH CIRCUIT |
| | * | STATE OF LOUISIANA |
| | * | |
| | * | |

* * * * * * *

**LOBRANO, J., DISSENTS AND ASSIGNS REASONS.**

I respectfully dissent from the majority's dismissal of this appeal. I would maintain the appeal as timely filed, as the record contains no evidence that Calogero's counsel received the notice of signing of judgment. I would, thus, decide the merits of the appeal, and for the reasons set forth in this dissent, I would affirm the April 19, 2018 judgment, amend the September 28, 2018 judgment and affirm as amended, and vacate the November 16, 2018 judgment.

*Timeliness of Appeal*

This case arises out of First City Court of New Orleans. The Supreme Court has made plain that the 10-day deadline, provided by La. C.C.P. art. 5002[1] within which to appeal a city court judgment, does not commence to run until "*receipt* of notice of judgment rather than upon the mere mailing of said notice." *Myles v. Turner*, 612 So.2d 32, 35 (La. 1993) (emphasis in original). The Fifth Circuit Court of Appeal for the State of Louisiana has held that where the record contains no

---

[1] La. C.C.P. art. 5002 provides as follows:

A. An appeal from a judgment rendered by a city court or a parish court may be taken only within ten days from the date of the judgment or from the service of notice of judgment, when such notice is necessary.

B. When an application for new trial is timely filed, however, the delay for appeal commences on the day after the motion is denied, or from service of notice of the order denying a new trial, when such notice is necessary.

1

evidence of the date on which the judgment or notice of signing was received, the appeal should be maintained. *See, e.g., Morice v. Alan Yedor Roofing & Constr.*, 2016-0532, pp. 9-10 (La. App. 5 Cir. 2/8/17), 216 So.3d 1072, 1079; *Kaye v. Karp*, 2017-0397, p. 3, n. 5 (La. App. 5 Cir. 12/27/17), 237 So.3d 614, 619, *writ denied*, 2018-0136 (La. 3/9/18), 237 So.3d 1193 (citing *Hacienda Const., Inc. v. Newman*, 2010-0018, pp. 4-5 (La. App. 5 Cir. 6/29/10), 44 So.3d 333, 336). I find these cases persuasive and adopt their holding.

The following dates are relevant to this Court's inquiry. On November 16, 2018, the city court rendered the judgment ruling on the motion for new trial, and a notice of signing was issued by the clerk of court on the same date. Calogero did not file a motion for appeal until January 11, 2019, 54 days later.[2]

No party filed a motion to dismiss this appeal as untimely. Nevertheless, "[a]ppellate courts have a duty to determine, *sua sponte*, whether the court has proper jurisdiction to consider the merits of an appeal filed in the court." *Schwarzenberger v. Louisiana State Univ. Health Scis. Ctr.-New Orleans*, 2018-0812, p. 2 (La. App. 4 Cir. 1/9/19), 263 So.3d 449, 451-52. "Absent a timely motion for appeal, the appellate court lacks jurisdiction over the appeal." *Tennebaum v. LeCompte*, 2015-0008, p. 2 (La. App. 4 Cir. 8/12/15), 173 So.3d 1185, 1185 (citation omitted).

Accordingly, this Court, on its own motion, issued an order to show cause why the appeal should not be dismissed as untimely. In response, Calogero submitted the affidavit of his attorney, who attested under oath that she never received the judgment or notice of signing from the city court. She also attested that the judgment was sent to a law office where she no longer practiced. The record contains conflicting information as to where counsel's office was located in

_____

[2] The majority opinion states that "[t]his appeal was filed on April 15, 2019." However, the record instead reflects that Calogero filed his motion for appeal on January 11, 2019, and this Court issued its notice that the record was lodged in this Court on April 15, 2019.

2

November 2018. Calogero's counsel did not file anything in the lower court record advising of her law office's change of address during this period. Notably, according to the notice of signing, the judgment was actually not mailed to *LIGA*; rather it was mailed to: (1) Calogero's counsel's address of record, and (2) an address where Calogero, also an attorney, has a law office.[3] Nevertheless, nothing in the record informs this Court when or if Calogero's attorney *received* the judgment or notice of signing from the city court.

The majority's premise for dismissing this appeal is Local Rule 6 § 7 of the First City Court of New Orleans, a city court procedural rule that requires counsel of record who moves his office to "change his address on all pleadings which he has previously filed and on which the former address has been shown." This local rule also states that "failure to do so will bar such attorney from pleading the nonreceipt of notice mailed by the Court to his address originally shown on the pleadings." The majority reads this local rule to conclusively bar this Court from finding no evidence of Calogero's counsel's receipt of the notice of signing. Under the majority's analysis, this Court is forced to assume that Calogero's counsel received the notice of signing on an unspecified date, but failed to file a motion for appeal within 10 days. The majority cites to no code article, statute, or reported jurisprudence that supports its position. I disagree with such a reading, and I find that it runs afoul of the Supreme Court's holding that the 10-day appeal delay under La. C.C.P. art. 5002 commences upon *receipt* of the notice of signing of judgment. *See Myles*, 612 So.2d at 35.

The Supreme Court has explicitly held that "local rules of court cannot conflict with legislation." *Rodrigue v. Rodrigue*, 591 So.2d 1171, 1171 (La. 1992). *See also Clark v. Dep't of Police*, 2012-1274, p. 7 (La. App. 4 Cir. 2/20/13), 155

---

[3] Calogero is not enrolled as counsel of record for himself. La. C.C.P. art. 1913 requires that the notice of signing of a final judgment "shall be mailed by the clerk of court to the counsel of record for each party..."

So.3d 531, 536. A court's authority to enact local procedural rules arises from La. C.C.P. art. 193, which allows such court to "adopt rules for the conduct of judicial business before it, including those governing matters of practice and procedure *which are not contrary to the rules provided by law*." (Emphasis added.) Even so, "the primary objective of all procedural rules should be to secure to parties the full measure of their substantive rights." *Unwired Telecom Corp. v. Par. of Calcasieu*, 2003-0732, p. 10 (La. 1/19/05), 903 So.2d 392, 401 (citations omitted). "It bears remembering that rules of procedure exist for the sake of substantive law and to implement substantive rights, not as an end in and of itself." *Id.*

"Local rules of court are intended solely to aid in the orderly and efficient conduct of litigation and are not to be construed so literally as to defeat their intended purpose." *Vincent v. Vincent*, 2011-1822, p. 12 (La. App. 4 Cir. 5/30/12), 95 So.3d 1152, 1161 (citations omitted). "Further, the trial court has great discretion in the construction, interpretation, application and enforcement of its own rules." *Id.*, 2011-1822, pp. 12-13, 95 So.3d at 1161.

The record does not show that the city court applied this local rule in this litigation, and the majority gives no reason why this Court is bound by the city court's local rule on appeal. No party complained of either the timeliness of this appeal or application of this local rule, and the parties have now waived these arguments. *See Lingo v. Lingo*, 52,105, p. 10 (La. App. 2 Cir. 4/11/18), 249 So.3d 932, 938 ("A local court rule cannot deprive a litigant of his right to access to the court … the parties, hearing officer, and original judge operated as if there had been a tacit waiver of the local court provision" setting deadline for filing written objections). Moreover, the record has never been supplemented with any evidence of Calogero's counsel's receipt of the judgment or the notice of signing. Rather, Calogero's counsel, an officer of the court, attests under oath that she never

4

received the judgment or notice of signing, and this Court has no evidence to the contrary.

In sum, I simply find no authority for the proposition that counsel's failure to lodge in the lower court notice of her change of address creates a jurisdictional defect imputable to her client, which in turn deprives this Court of appellate jurisdiction over this case. Rather, I would follow *Myles'* and the Fifth Circuit's interpretation of La. C.C.P. art. 5002. Because the date of receipt of the notice of signing of judgment cannot be "firmly established," I would maintain the appeal as timely, "as appeals are favored under the law, and any doubt as to the timeliness of an appeal shall be resolved in favor of maintaining, rather than dismissing an appeal." *Kaye*, 2017-0397, p. 3, n. 5, 237 So.3d at 619 (citing *Hacienda Const., Inc.*, 2010-0018, pp. 4-5, 44 So.3d at 336).

### Merits of Appeal

#### Factual and Procedural History

This is a bad faith action for failure to pay an automobile insurance claim. This litigation stems from a February 7, 2014 automobile accident, wherein Calogero's vehicle was struck by the vehicle of an at-fault driver, Michael Klying. At the time of the accident, USAgencies provided automobile insurance coverage to Klying, and USAA provided coverage to Calogero. Following the accident, Calogero submitted a claim to USAgencies and notified USAA of the accident. USAgencies did not contest its liability for the accident.

On February 11, 2014, USAgencies issued a check to Calogero in the amount of $3,105.81 for the damage to his vehicle.[4] Calogero deposited said check. On February 17, 2014, however, USAgencies stopped payment on its check, and Calogero's account was debited $3,105.81 plus $12.00 for a deposit item returned

---

[4] Calogero settled his bodily injury claim separately with USAgencies.

5

fee. USAgencies did not reissue any payment to Calogero for his property damage. On February 25, 2014, USAA issued a check to Calogero in the amount of $5,922.31, which Calogero deposited. USAA then initiated a subrogation claim against USAgencies for $4,427.56.

On March 13, 2014, Calogero filed a petition for damages alleging that USAgencies failed to pay his property damage claim within thirty (30) days after receiving satisfactory proof of loss and is liable for penalties and attorney's fees under Louisiana's bad faith statutes. Calogero also alleged that USAgencies is liable for property damage, lost wages, and rental vehicle expenses. USAgencies was subsequently renamed Affirmative Casualty Insurance Company. Thereafter, on April 11, 2016, Affirmative was declared insolvent. Pursuant to Affirmative's insolvency, on July 12, 2017, LIGA filed a petition for intervention, asserting all of Affirmative's rights and duties pursuant to the LIGA law, La. R.S. 22:2051, *et seq.*[5]

On December 1, 2017, LIGA filed a motion for partial summary judgment, claiming a dollar-for-dollar credit for all sums that USAA paid Calogero and arguing that LIGA has no liability for Calogero's bad faith claims against USAgencies. Calogero opposed the motion, contending that LIGA is not entitled to immunity from attorney's fees arising from a bad faith claim. On April 19, 2018, the city court granted partial summary judgment[6] in favor of LIGA, and held, in pertinent part:

---

[5] "The purpose of this Part [the LIGA law] is to provide for the payment of covered claims under certain insurance policies with a minimum delay and a minimum financial loss to claimants or policyholders due to the insolvency of an insurer, to provide financial assistance to member insurers under rehabilitation or liquidation, and to provide an association to assess the cost of such operations among insurers." La. R.S. 22:2052.

[6] The city court's April 19, 2018 ruling is entitled "Reasons for Judgment." It is evident, however, that this ruling was intended to be a judgment with incorporated reasons, because (1) it contains a decree granting LIGA's motion for partial summary judgment; (2) it states that "judgment" was "rendered and signed"; (3) it is accompanied in the record by a notice of signing of judgment, and (4) the record lacks any other document memorializing this ruling. I construe this April 19, 2018 ruling as an interlocutory partial summary judgment in favor of LIGA.

The Court finds that while LIGA is the statutory successor of Affirmative Insurance, formerly known as, USAgencies, LIGA is not an "insurer" and thus cannot be held liable for statutory penalties and attorney's fees for the bad faith of the insurer to which it succeeds….

… Plaintiff's bad faith claim for penalties, and attorney's fees against LIGA is therefore dismissed….

… As the plaintiff was already compensated by his own insurance company, for his property damage, he has no further property damage claim against LIGA. … LIGA is entitled to a dollar for dollar credit for all sums paid to the Plaintiff by USAA for his property damage claim.

**THEREFORE, IT IS ORDERED ADJUDGED AND DECREED** that LIGA's Motion for Partial Summary Judgment is hereby GRANTED.

**JUDGMENT READ, RENDERED AND SIGNED** at New Orleans, Louisiana on this 19th day of April, 2018.

On April 27, 2018, Calogero filed a motion for reconsideration, which was denied on August 1, 2018. The case then proceeded to trial on September 12, 2018.

On September 28, 2018, the city court rendered judgment as follows: (1) USAgencies was found liable to Calogero for $3,105.81 plus court costs, interest, penalties, and attorney's fees due to bad faith; (2) LIGA was found liable to Calogero for rental car expenses in the amount of $275.88 plus interest; and (3) no damages were awarded for lost wages.

On October 5, 2018, Calogero filed a motion to amend judgment and/or motion for new trial. In this motion, Calogero sought: first, to amend certain phraseology in the decretal language he argued was confusing, and second, a new trial on the issues of calculation of attorney's fees, court costs, and rental car expenses. The city court held a hearing on November 13, 2018.

On November 15, 2018, the city court's staff circulated to counsel for the parties via email an unsigned proposed judgment. Counsel for LIGA responded via email, copying opposing counsel and the court, advising that on November 15,

2018, Calogero's counsel sent him a demand letter taking the position that LIGA was responsible for the $3,105.81 judgment against USAgencies plus interest. In this email communication, LIGA's counsel asked that the court include language in the amended judgment that LIGA "has no statutory duty or obligation to pay this judgment on behalf of USAgencies…" LIGA did not file any motion in the city court concerning this request. In response, Calogero filed in the city court a written opposition to LIGA's email request, arguing that LIGA's request was untimely and made in an *ex parte* communication.

On November 16, 2018, the city court rendered an amended judgment, which revised the decretal language as Calogero requested, but otherwise denied all other relief. The amended judgment also contained new language that "Louisiana Insurance Guaranty Association has no statutory duty or obligation to pay on behalf of USAgencies Casualty Insurance Company's bad faith." This appeal followed.

### Law and Analysis

Calogero raises four assignments of error on appeal, contending that the city court erred in:

1. improperly amending the judgment in response to LIGA's counsel's email request;
2. rendering judgment for property damage against USAgencies only and not LIGA;
3. excluding evidence of attorney's fees incurred by Calogero; and
4. granting LIGA's motion for partial summary judgment dismissing Calogero's claim for attorney's fees and failing to award attorney's fees at trial.

#### Amendment of Judgment

Turning to Calogero's first assignment of error, I consider whether the city court erred by amending its judgment to add language that LIGA "has no statutory

duty or obligation to pay on behalf of USAgencies['] … bad faith." Calogero complains that the city court improperly amended the judgment in response to an untimely *ex parte* communication from LIGA's counsel after the hearing on Calogero's motion for new trial. It is evident from the record that Calogero opposed this amendment. Thus, I find that the city court erred by amending the judgment without a new contradictory hearing on the issue.

"It is well settled under our jurisprudence that a judgment which has been signed cannot be altered, amended, or revised by the judge who rendered the same, except in the manner provided by law." *Bourgeois v. Kost*, 2002-2785, p. 7 (La. 5/20/03), 846 So.2d 692, 696. La. C.C.P. art. 1951 permits a court – either on motion of a party or on its own motion – to amend a final judgment "at any time to alter the phraseology of the judgment, but not its substance." Nevertheless, the "judgment may be amended only after a hearing with notice to all parties, except that a hearing is not required if all parties consent or if the court or the party submitting the amended judgment certifies that it was provided to all parties at least five days before the amendment and that no opposition has been received." *Id.* This requirement for a "hearing" or "consent" applies "irrespective of whether the amendment involves non-substantive changes to the judgment." *Cmty. Assocs., Inc. v. Taylor*, 2019-0242, p. 5 (La. App. 4 Cir. 7/31/19), -- So.3d --, 2019 WL 3470941, *3.

The "usual remedy of the appellate court" where a final judgment has been amended in violation of La. C.C.P. art. 1951 "is to vacate the amended judgment and reinstate the original judgment…" *Tunstall v. Stierwald*, 2001-1765, p. 6 (La. 2/26/02), 809 So.2d 916, 920. The Louisiana Supreme Court has recognized,

9

however, in a case which "will not be resolved by such a remedy," La. C.C.P. art. 2164 permits the appellate court to "render any judgment which is just, legal and proper upon the record on appeal." *Id.*, 2001-1765, p. 6, 809 So.2d at 920-21. I would utilize that authority in this matter as follows.

First, I would vacate the November 16, 2018 judgment.[7] Next, I would reinstate and amend the September 28, 2018 judgment to clarify certain decretal language that was at issue in Calogero's motion to amend and/or motion for new trial. That language read, as rendered:

> **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that US Agencies is cast in judgment against plaintiff, Gerald J. Calogero in the amount of $3,105.81 plus court costs, judicial interest from the date of judicial demand, penalties, and attorney's fees due to bad faith.

> **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that LIGA is cast in judgment against plaintiff, Gerald J. Calogero in the amount of $275.88 plus judicial interest from the date of judicial demand for plaintiff's rental car expenses.

I would amend the September 28, 2018 judgment to delete the above-quoted paragraphs and replace them with the following:

> **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that judgment is rendered in favor of plaintiff, Gerald J. Calogero, and against defendant, USAgencies Casualty Insurance Company, Inc., in the amount of $3,105.81 plus court costs, judicial interest from the date of judicial demand, penalties and attorney's fees due to USAgencies' bad faith.

> **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that judgment is rendered in favor of plaintiff, Gerald J. Calogero, and against Intervenor, Louisiana Insurance Guaranty Association, in the amount of $275.88 plus judicial interest from the date of judicial demand for the plaintiff's rental car expenses.

---

[7] I recognize that in vacating this judgment, I would likewise vacate the city court's disposition of Calogero's motion to amend and/or motion for new trial relative to the September 28, 2018 judgment. Nevertheless, as I would affirm the April 19, 2018 judgment and affirm as amended the September 28, 2018 judgment, the motion would be moot.

Then, for the reasons that follow, I would affirm the September 28, 2018 judgment as amended.

I now discuss the remaining assignments of error in reverse order.

### *Bad Faith Attorney's Fees*

Calogero's fourth assignment addresses whether LIGA is liable for attorney's fees arising from an insolvent insurer's pre-insolvency bad faith. The city court held that LIGA cannot be liable for attorney's fees in this bad faith claim because LIGA is not an "insurer." Calogero argues that, under recent amendments to the LIGA law, attorney's fees qualify as "covered claims" for which LIGA is responsible.

This issue implicates two judgments: (1) the April 19, 2018 partial summary judgment dismissing the bad faith penalty and attorney fee claims against LIGA; and (2) the September 28, 2018 judgment, which likewise assessed no penalties or attorney's fees against LIGA.

Whether attorney's fees are due under the insurance code or LIGA law involves a question of statutory interpretation, which is a question of law subject to *de novo* review. *Benjamin v. Zeichner*, 2012-1763, p. 5 (La. 4/5/13), 113 So.3d 197, 201. This Court likewise reviews *de novo* lower court rulings granting or denying summary judgment, using the same criteria that govern the lower court's consideration of whether summary judgment is appropriate. *Billeaudeau v. Opelousas Gen. Hosp. Auth.*, 2016-0846, p. 9 (La. 10/19/16), 218 So.3d 513, 520. "[A] motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art.

11

966(A)(3). "When summary judgment is granted in the context of statutory interpretation, there are no material issues of fact in dispute, and the sole issue before the reviewing court is a question of law as to the correct interpretation of the statute at issue." *Billeaudeau*, 2016-0846, pp. 9-10, 218 So.3d at 520.

Calogero's claim for attorney's fees arises from La. R.S. 22:1892, a "bad faith" statute within the insurance code, which imposes attorney's fees against an "insurer" who arbitrarily fails to timely pay a property damage claim due to a bona fide third party claimant.[8] "The bad faith statutes are penal in nature and should be strictly construed." *Feingerts v. Louisiana Citizens Prop. Ins. Corp.*, 2018-0381, p. 5 (La. App. 4 Cir. 2/13/19), 265 So.3d 62, 66, *writ denied*, 2019-00436 (La. 9/6/19)(citations omitted).[9]

_____

[8] La. R.S. 22:1892 provides, in relevant part:

A.     …                                                        …
(2) All insurers issuing any type of contract, other than those specified in R.S. 22:1811, R.S. 22:1821, and Chapter 10 of Title 23 of the Louisiana Revised Statutes of 1950, shall pay the amount of any third party property damage claim and of any reasonable medical expenses claim due any bona fide third party claimant within thirty days after written agreement of settlement of the claim from any third party claimant.
…
(4) All insurers shall make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim.

B. (1) Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor or failure to make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim, as provided in Paragraphs (A)(1) and (4) of this Section, respectively, or failure to make such payment within thirty days after written agreement or settlement as provided in Paragraph (A)(2) of this Section when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of fifty percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, payable to the insured, or to any of said employees, or in the event a partial payment or tender has been made, fifty percent of the difference between the amount paid or tendered and the amount found to be due as well as reasonable attorney fees and costs….

[9] Another bad faith statute, La. R.S. 22:1973, provides that "[t]he Insurance Guaranty Association Fund, as provided in R.S. 22:2051 *et seq.*, shall not be liable for any special damages awarded under the provisions of this Section." Calogero avers that he makes no claim for attorney's fees under this statute against LIGA.

In *Bowens v. Gen. Motors Corp.*, 608 So.2d 999, 1005 (La. 1992), the Louisiana Supreme Court held that LIGA is not liable for statutory penalties or attorney's fees. In particular, the Court found that "LIGA is not an insurer," but is an "association" created under the LIGA law. *Id.* The Court also found that "an obligation arising out of a penalty statute 'is separate and distinct from the obligation arising out of the contractual relationship under the insurance policy.'" *Id.* at 1004 (quoting *Cantrelle Fence and Supply Co. v. Allstate Ins. Co.*, 515 So.2d 1074, 1079 (La. 1987)). "It follows, therefore, that any obligation imposed on the insolvent insurer for penalties and attorney fees is separate from its contractual obligations arising out of the policy, and this obligation falls outside of the definition of covered claims for which LIGA is liable, as set forth in" the LIGA law. *Id.* (citing *Williams v. Champion Ins. Co.*, 590 So.2d 736 (La. App. 3rd Cir.1991); *Breaux v. Klein*, 572 So.2d 656 (La. App. 5th Cir. 1990), *writ denied*, 573 So.2d 1140 (La. 1991)).[10]

At the time *Bowens* was decided, the LIGA law was codified at La. R.S. 22:1377 *et seq.* Citing the statutes in effect at the time of Bowens' accident, the Court stated:

> La. R.S. 22:1382(1)(a) & (b) provide[d] that LIGA shall "be obligated to the extent of covered claims" and be "deemed the insurer to the extent of its obligations on the *covered claims*...." [emphasis added]. At the time of this case, [La. R.S. 22:1379(3)] defined "covered claims" as "an unpaid claim, including one for unearned premiums, which arises out of and is within the coverage and not excess of the applicable limits of an insurance policy to which this Part applies...."

*Bowens*, 608 So.2d at 1004.

---

[10] *See also Laris v. Parker*, 92-1443, p. 6 (La. App. 4 Cir. 3/29/94) 635 So.2d 442, 445; *Lastie v. Warden*, 611 So.2d 721, 723 (La. App. 4th Cir. 1992), *writ denied*, 614 So.2d 64 (La. 1993)(citing *Breaux*, 572 So.2d 656)(rejecting claims for bad faith penalties and attorney's fees against LIGA).

13

Currently, La. R.S. 22:2058(A)(1)(a) provides that the "association [LIGA] shall: Be obliged to pay covered claims pursuant to an order as provided in R.S. 22:2008(C), existing prior to the determination of the insurer's insolvency…" "To the extent of its obligation on the covered claims," LIGA shall "have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent…" La. R.S. 22:2058(A)(2). At all times relevant to this litigation, the definition of "covered claim" was provided in La. R.S. 22:2055(6) as follows:

> (6) "Covered claim" means the following:
> (a) An unpaid claim, including one for unearned premiums that arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this Part applies issued by an insurer, if such insurer becomes an insolvent insurer after September 1, 1970, and the policy was issued by such insurer and any of the following:
>> (i) The claimant or insured is a resident of this state at the time of the insured event, provided that, for entities, the residence of a claimant or insured is the state in which its principal place of business is located at the time of the insured event.
>> (ii) The claimant is a self-insurer, including an arrangement or trust formed under R.S. 23:1191 et seq., and is principally domiciled in this state at the time of the insured event.
>> (iii) The claim is a first party claim for damage to property with a permanent location in this state.
> (b) "Covered claim" shall not include:
>> (i) Any amount awarded as penalties, punitive or exemplary damages…

Calogero argues that the current version of La. R.S. 22:2055(6) permits an award of attorney's fees in a bad faith claim because attorney's fees are not specifically excluded by La. R.S. 22:2055(6)(b)(i). He contends that in 2009, prior to the events at issue in this litigation, La. R.S. 22:2055(6)(d) provided that:

> "Covered claim" shall not include any claim based on or arising from a pre-insolvency obligation of an insolvent insurer, including but not limited to contractual attorneys' fees and expenses, statutory penalties and attorneys' fees, court costs, interest and bond premiums, or any other expenses incurred prior to the determination of insolvency.

According to Calogero's argument, because the 2009 version of this subsection specifically excluded statutory attorney's fees and this subsection has been amended, an award of statutory attorney's fees against LIGA is now permissible.

I disagree. I also find no reason to conclude that *Bowens* is legislatively overruled. With respect to the issues on appeal, the definition of covered claim is substantially the same now as it was when *Bowens* was decided. At no time relevant to this litigation has the LIGA law ever defined LIGA as an "insurer." LIGA remains a statutorily created "association."

I find, as did the Louisiana Supreme Court, that LIGA is not liable for statutory attorney's fees because LIGA is not an "insurer." *Bowens*, 608 So.2d at 1005. Moreover, an insolvent insurer's obligation for statutory attorney fees is "separate from its contractual obligations arising out of the policy" and "falls outside of the definition of covered claims for which LIGA is liable." *Id.* at 1004. I find no error in the city court's dismissal of Calogero's bad faith claim for attorney's fees.

### *Evidence of Attorney's Fees*

In Calogero's third assignment of error, he argues that the city court erred in excluding evidence of the amount of attorney's fees he incurred. Because of our conclusion that LIGA is not responsible for attorney's fees in this case, I find it unnecessary to address this issue, and I pretermit this assignment.[11]

---

[11] I further note that Calogero failed to properly preserve this issue for appeal. Nothing in the record shows that Calogero attempted to introduce evidence of attorney's fees or that the city court made any ruling excluding such evidence. Rather, the record shows that Calogero submitted attorney fee invoices and his testimony regarding fees he incurred by way of proffer, which the city court allowed. The record contains the proffered evidence. Where a party does not attempt to introduce the proffered evidence and there is no ruling by the lower court excluding the specific evidence included in the proffer, the proffer is "technically improper." *Bridgers v. Sw. Louisiana Hosp. Ass'n*, 99-520, p. 8 (La. App. 3 Cir. 11/3/99), 746 So.2d 731, 736, *writ denied*, 99-3402 (La. 2/18/00), 754 So.2d 965. Where a party "did not attempt to introduce the

*Liability for Property Damage*

Lastly, in Calogero's second assignment of error, he contends that the city court erred in rendering judgment against USAgencies, but not LIGA, for property damage. He argues that property damage is a covered claim such that LIGA is responsible for paying the $3,105.81 judgment – representing property damage – rendered against USAgencies.

In its April 19, 2018 judgment, the city court granted partial summary judgment in favor of LIGA finding, in pertinent part, that LIGA was entitled to a dollar-for-dollar credit for all sums that USAA paid to Calogero for his property damage claim. La. R.S. 22:2062(A)(1) requires that any person having a claim against an insurer must first exhaust all coverage provided by any other insurance policy. Once the claimant has done this, La. R.S. 22:2062(A)(2) provides that:

> **Any amount payable on a covered claim** under this Part **shall be reduced** by the full applicable limits stated in the other insurance policy, or **by the amount of the recovery under the other insurance policy** as provided herein. The association [LIGA] and the insured **shall receive a full credit** for the stated limits… (Emphasis added).

The record contains no dispute that USAA paid Calogero for his property damage in the amount of $5,922.31, which exceeds the $3,105.81 property damage award against USAgencies. As LIGA is statutorily entitled to a dollar-for-dollar credit for all sums that USAA paid to Calogero herein, LIGA has no remaining liability to Calogero for property damage. I find no error in the city court's ruling awarding no amount in property damage against LIGA. This assignment lacks merit.

---

proffered evidence at trial," it "cannot now claim [on appeal] that the evidence was admissible … in order to obtain a review of the proffered evidence by this [appellate] court." *Id.*

*Conclusion*

Accordingly, for these reasons, I dissent from the majority's dismissal of this appeal. I would affirm the April 19, 2018 judgment, amend the September 28, 2018 judgment and affirm as amended, and vacate the November 16, 2018 judgment.